IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DISTRICT

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               ) No. 3:16-cr-46
      vs.                      ) Knoxville, Tennessee
                               ) June 14, 2016
SZUHSIUNG HO,                  ) 11:00 a.m.
                               )
            Defendant.         )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE H. BRUCE GUYTON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:      CHARLES E. ATCHLEY, JR. ESQ.
                        U.S. Dept. of Justice
                        Office of U.S. Attorney
                        800 Market Street, Ste. 211
                        Knoxville, Tennessee

For the Defendant:      PETER R. ZEIDENBERG, ESQ.
                        Arent Fox, LLP
                        1717 K Street, NW
                        Washington, D.C.

                        WADE V. DAVIES, ESQ.
                        Ritchie, Dillard, Davies &
                        Johnson, P.C.
                        606 West Main Street, Ste. 300
                        Knoxville, Tennessee

_____

Lynda Clark, LCR #034, RMR, CRR
MILLER & MILLER COURT REPORTERS
12804 Union Road, Knoxville, Tennessee
Phone: (865) 675-1471 / FAX: (865) 675-6398
Email: JMccon3590@aol.com

Electronically signed by Lynda Clark (601-377-188-1426)

cb898268-ddba-481c-b629-545a534f607e

1       This cause came on for hearing on the 14th

2  day of June, 2016, in the United States District Court

3  for the Eastern District of Tennessee, Northern

4  Division, before the Honorable H. Bruce Guyton,

5  presiding.

6       The Court having been duly opened, the

7  following proceedings were had, to-wit:

8       THE COURTROOM DEPUTY:  All rise.  The United

9  States District Court for the Eastern District of

10  Tennessee is now open pursuant to adjournment with the

11  Honorable Bruce Guyton, United States Magistrate

12  Judge, presiding.

13       Please come to order and be seated.

14       Case No. 3:16-cr-46, United States of

15  America versus Szuhsiung Ho.

16       Here on behalf of the defendant is Peter

17  Zeidenberg and Wade Davies.

18       Is counsel for the defendant present and

19  ready to proceed?

20       MR. ZEIDENBERG:  Good morning, Your Honor.

21       THE COURTROOM DEPUTY:  Here on behalf of the

22  government is Charles Atchley.

23       Is counsel for the government present and

24  ready to proceed?

25       MR. ATCHLEY:  Present and ready, Your Honor.

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    I also have Casey Airwood from the department.

2             THE COURT:  All right.  Good morning,

3    counsel.

4             Mr. Ho, can you hear me?

5             THE DEFENDANT:  Yes, sir.

6             THE COURT:  All right.  Counsel, first let's

7    take up this motion to declare the case complex,

8    extend time for filing, set a new trial date and so

9    forth.  And I understand it's unopposed.

10            Is that correct, Mr. Atchley?

11            MR. ATCHLEY:  That is correct, Your Honor.

12   Additionally, just so the Court has all the facts I

13   also --

14            THE COURT:  Mr. Atchley, I've got to remind

15   everybody.  We have a new sound and recording system

16   in this courtroom, just installed.  It will not pick

17   you up unless you're either at the podium or seated

18   and speaking into the microphone.

19            (Mr. Atchley went to the podium.)

20            THE COURT:  That's fine.

21            MR. ATCHLEY:  In addition to discovery

22   that's already been provided I provided Mr. Zeidenberg

23   and Mr. Davies a DVD that contained approximately a

24   gigabyte worth of bank records this morning also that

25   we just came into possession of.  So that would be on

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    top of the existing discovery that they would need to

2    go through before trial.

3              THE COURT:  All right.  So the government is

4    in agreement with the defendant's motion?

5              MR. ATCHLEY:  We are, Your Honor.

6              THE COURT:  All right then.  Is it

7    Mr. Zeidenberg?  Will you be addressing the motion?

8              MR. ZEIDENBERG:  I will, Your Honor.

9              THE COURT:  All right, sir.  And what

10   schedule are you looking at for a trial date?

11             MR. ZEIDENBERG:  Your Honor, I would

12   respectfully ask if we could set the trial date after

13   we have a ruling from Your Honor on the bail motion,

14   because obviously it's going to affect in different

15   ways our scheduling request, both because, one, if

16   Mr. Ho is detained throughout, obviously we're going

17   to be urgently trying to move forward as quickly as we

18   possibly can; and secondly, it's complicated by the

19   fact that notwithstanding we have -- we'll be pushing

20   for a sooner trial date as we can.

21             It's going to greatly complicate our trial

22   preparation schedule, because Mr. Ho wouldn't be

23   available, except in a very limited way, to assist us

24   in viewing the materials and coming up with an

25   understanding of the facts, which are complicated.

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    So those are two factors that sort of run in

2    opposite directions.  And so respectfully, I'd ask if

3    we could see what Mr. Ho's status is, and then we can

4    I think maybe a have a more intelligent or informed

5    decision on our part about what type of date we should

6    be looking for.

7    THE COURT:  Well, our practice is to set a

8    trial date and then take up the issue of detention.

9    MR. ZEIDENBERG:  Well, I don't want to

10   disrupt the Court's practice.  If you want to pick a

11   date in December, I would think with the understanding

12   that, as we explained in our motion, Judge, there is

13   we're told 80,000 e-mails in this case.

14   I haven't gotten any of them; not because of

15   any problem with the government.  There have been some

16   technology issues on our part.  We just got the disk

17   from prior counsel last week.  We had trouble reading

18   them.  So there's 80,000 unread e-mails.  And half of

19   them I'm told are in Chinese, which I have no

20   familiarity with being able to speak.  So we're going

21   to have to get translations done.  We're going to have

22   to somehow try and get these in front of Mr. Ho.

23   So I can suggest a trial date in December,

24   but I don't know -- what I don't know is going to be

25   in that discovery, which could drastically change our

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    assessment of the case, the evidence, our strategy.

2    So there's literally no discovery that we have been

3    able to -- I shouldn't say literally none -- very,

4    very little in the way of discovery that we have thus

5    far been able to access.

6              THE COURT:  Does your firm represent ETI?

7              MR. ZEIDENBERG:  We haven't discussed that,

8    Your Honor, but I think that we will be.

9              THE COURT:  You think you will be.  Is Kish

10   and Lietz -- are they out of this case now?

11             MR. ZEIDENBERG:  I believe they will be,

12   Your Honor.

13             THE COURT:  They will be.

14             Well, let me see what the government has to

15   say.

16             Mr. Atchley, the defendant is asking the

17   Court to basically rule on the detention issue and

18   then take up the matter of a trial date.

19             The only problem with that is there may not

20   be a ruling today on this detention issue.  It may be

21   taken under advisement.  There may be a written

22   opinion.  You know, we may bring you back for a

23   further hearing.  I don't know.  Let's hear what the

24   government wants to say about that.

25             MR. ATCHLEY:  Well, with all due respect to

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1  Mr. Zeidenberg, I think we need to go ahead and set a

2  trial date.  I told him earlier that I felt like if we

3  -- I was fine.  I understood their position.  I did

4  not oppose more time in this matter.  I recognize the

5  complexity of it and the issues regarding the

6  discovery and that it will take them time to prepare.

7          The only thing that I ask is that if we do

8  set a trial date, it would be nice that if we set one

9  out far enough to where we knew we were going to get

10  all of our pre-trial litigation completed so that we

11  had a firm trial date in the future and we didn't run

12  up against it and then have to move it again.  That

13  would be my only request.

14          The only other request would be that if

15  we're going to target something around December, I

16  would prefer to go into January because of the holiday

17  season.  It's going to take us some time to try it.

18  If we set it at any time in December, I think we're

19  seriously looking at running the risk of bifurcating

20  it around the holidays.

21          That's not good for the defendant.  That's

22  not good for the government.  It's not good for the

23  Court.

24          THE COURT:  Well, the defendant has

25  indicated that they anticipate motion practices --

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1           Well, what do you think in terms of a trial

2     setting, Mr. Zeidenberg?

3           MR. ZEIDENBERG:  I'm sorry, Your Honor.  Say

4     that again, please.

5           THE COURT:  What are you contemplating in

6     terms of setting a trial date in this case?  You said

7     something about December.  Is that what -- you've also

8     indicated that you anticipate motion practice on

9     behalf of your defendant.

10          MR. ZEIDENBERG:  Yes, I do; extensive I

11    would think.

12          THE COURT:  All right.

13          MR. ZEIDENBERG:  I mean I don't -- if we

14    want to pick a date in January, you know, that's I

15    think the government's suggestion maybe.  I don't know

16    what the government is thinking in the terms of the

17    length this case would take to try.

18          THE COURT:  Judge Varlan has provided the

19    following dates in January for your consideration:

20    January 10, 17, 24.

21          MR. ZEIDENBERG:  I'm available.

22          THE COURT:  He's available.  Mr. Atchley.

23          MR. ATCHLEY:  I would prefer the 24th just

24    because it gets me out of Christmas.

25          THE COURT:  All right.  The Court is going

Electronically signed by Lynda Clark (601-377-188-1426)                                    cb898268-ddba-481c-b629-545a534f607e

1    to find that the defendant's motion is well-taken.  It

2    will be granted.  The Court is going to declare the

3    case complex and extend the time for filing pre-trial

4    motions as well as resetting the trial date.  The

5    trial date will be reset to January 24 of 2017.

6              What are you asking for in terms of time for

7    filing motions, sir?

8              MR. ZEIDENBERG:  I'd ask for 60 days, Your

9    Honor.

10             THE COURT:  Do you have a specific date you

11   would like to request, counsel?

12             MR. ZEIDENBERG:  No, Your Honor; whatever

13   the Court --

14             THE COURT:  Any objection, Mr. Atchley?

15             MR. ATCHLEY:  No, sir.  No objection.

16             THE COURT:  All right.  August 19th.

17             MR. ZEIDENBERG:  Thank you.

18             THE COURT:  The government will respond on

19   or before September 2 unless you request additional

20   time, Mr. Atchley.

21             MR. ATCHLEY:  Yes, sir.  And I don't

22   anticipate it, but if they're very complex pre-trial

23   motions, I may require some additional time to

24   respond.

25             THE COURT:  All right.  And, Mr. Zeidenberg,

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    if you find that you do require more time beyond

2    August 19th, of course, you have leave to file a

3    motion to make that request.

4              MR. ZEIDENBERG:  Thank you, Your Honor.

5              THE COURT:  All right.  Is there anything

6    else the Court needs to address today with regard to

7    this --

8              Do you want to set a pre-trial conference

9    today?

10             (The Court and law clerk conferred.)

11             THE COURT:  Okay.  All right.  We'll set a

12   pre-trial conference in this case on January 10 at

13   1:30.

14             Is the government requesting a plea cutoff

15   at that date, Mr. Atchley?

16             MR. ATCHLEY:  Your Honor, actually could

17   we -- we would like a plea cutoff.  I think it's fine

18   for that date, yes, sir.

19             THE COURT:  Okay.  January 10th at 1:30 for

20   pre-trial conference, plea cutoff, reciprocal

21   discovery.

22             Anything else?

23             MR. ATCHLEY:  No, sir, not from the

24   government.

25             THE COURT:  Anything else on the schedule,

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    Mr. Zeidenberg?

2              MR. ZEIDENBERG:  No, Your Honor.

3              THE COURT:  All right.  Thank you, counsel.

4              All right.  The government's requested --

5    the defendant has requested a hearing on detention in

6    this matter.

7              Mr. Atchley, is the government still

8    requesting detention of the defendant?

9              MR. ATCHLEY:  Yes, sir, we are.  We filed a

10   response to the defendant's motion.

11             Your Honor, I don't believe there's a

12   factual dispute with regard to the facts surrounding

13   the defendant in this case, but we have a position

14   with regard to this matter, and we move that he be

15   detained.

16             THE COURT:  All right.  Let's hear from the

17   defendant first then.

18             Counsel --

19             Oh, before we begin, let me just make sure

20   we agree on something.  It appears to the Court that

21   the presumption does not apply in this case.

22             Is that correct, Mr. Atchley?

23             MR. ATCHLEY:  Yes, sir, that is correct.

24             THE COURT:  All right.  Obviously you agree?

25   Mr. Davies is nodding his head.

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1      MR. DAVIES:  Yes.

2      THE COURT:  All right.  The Court is going

3  to find at the outset that there is no presumption of

4  detention applicable in this case.

5      Mr. Zeidenberg.

6      MR. ZEIDENBERG:  Thank you, Your Honor.

7      Your Honor, I appreciate the point that the

8  Court just made, and I think that that's obviously

9  what the Court should start with.  There is in fact

10  under the bail statute, as I'm sure the Court is

11  aware, a presumption in favor of release and that the

12  Court is to fashion the least restrictive terms that

13  would reasonably assure the defendant's appearance in

14  court.

15      I suggest respectfully that pre-trial

16  detention is not the least restrictive means that

17  would reasonably assure Dr. Ho's appearance in court.

18      Your Honor, the factors that the Court

19  should, as instructed under the statute, consider all

20  weigh -- suggest in favor of pre-trial release.

21      First of all, there's no presumption in this

22  case, and I think that's highly significant in light

23  in particular to the government's response, which I

24  received yesterday evening.  The government's argument

25  essentially, Your Honor, is under the statute he's

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    looking at a potential life sentence; and therefore,

2    it's inherent that he would have a desire to flee and

3    you should detain him.

4           Essentially what the government is arguing

5    is in favor of a presumption based on the statute that

6    is charged.  But that's not what the law says.  The

7    law specifically identifies particular statutes in

8    which the presumption resides.  This particular

9    statute does not have that presumption.  Simply

10   looking at the potential sentence does not create a

11   presumption.

12          If you look at the nature and circumstances

13   of the offense charged, Judge, this case -- and we

14   went into considerable detail in our factual section

15   of our brief.  And the reason we did that is to

16   emphasize to the Court that this case is more -- from

17   what we have read and what we have seen more in the

18   nature of a regulatory offense where Dr. Ho the

19   government seems to be alleging did not get

20   authorization or a license to do what he otherwise

21   could have done.

22          There is nothing about the nature and

23   circumstances of the offense charged that suggests

24   pre-trial detention is required.  It's not a crime of

25   violence.

Electronically signed by Lynda Clark (601-377-188-1426)

cb898268-ddba-481c-b629-545a534f607e

1            And the second factor, the weight of the

2    evidence --

3            THE COURT:  On this first factor before we

4    leave it -- and we're talking about the 3142(g)(1)

5    factors with regard to nature and circumstances of the

6    offense charged.  The statute specifically lists a

7    rather -- I don't know -- undefined term called

8    Federal Crime of Terrorism.  Is that applicable in

9    this case?

10            MR. ZEIDENBERG:  Your Honor, there is no

11    evidence of that that's been alleged in any way,

12    shape, or form.  And I don't even want to say the word

13    bomb, but I'm going to say it.  But there is no

14    suggestion that Dr. Ho was involved in terrorism,

15    assisting terrorists.

16            I mean, Your Honor, China -- obviously we

17    have a -- the United States -- I'm not a foreign

18    policy expert, but the United States has a complicated

19    relationship with China.  But the fact remains China

20    has dozens, if not more, nuclear power plants, most of

21    which have been built by other American companies or

22    other western European companies.  Technology --

23    Westinghouse was involved in building most of their

24    nuclear power plants.  So it's in our country's

25    interests to have those nuclear power plants operate

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    safely and efficiently.

2         Now, the government has not alleged that

3    there was any diversion of this material, that it was

4    any part of Dr. Ho's -- it's not alleged as part of a

5    conspiracy to engage in anything that's other than

6    what's on the four corners of the document, which is

7    assisting them with these nuclear power reactors,

8    which as I understand it as a natural byproduct of the

9    process of generating electricity produce small

10   amounts of plutonium.  That's our understanding of

11   what the government's theory is.

12        So as the Court I'm sure is well-aware, I

13   don't know if you want to take judicial notice, but as

14   I understand it, China has been a nuclear power for

15   decades and is actually a signatory to treaties with

16   the United States regarding nuclear power.

17        So this is not a case involving Iran.  It's

18   not a case involving North Korea.  I by no means want

19   to make light of the nature of the charges.  Obviously

20   they're very serious.  But I think it's important to

21   discriminate in our minds between what is actually

22   alleged and what could be alleged in cases involving a

23   statute like that.

24        And frankly, I think that this statute --

25   and this will come out I'm sure down the road -- that

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    I think this statute is really designed to prevent the

2    harms that the Court just alluded to, which is doing

3    things which support terrorism.

4         Your Honor, as to the weight of the

5    evidence, I think there's a real question in our minds

6    in reading this statute whether a crime has even been

7    alleged.  This statute is complicated.  It's never

8    been used before.  It's, as I said in our papers, an

9    aggressive and novel application of it.

10         I think by definition the fact that a

11   statute that's never been employed before in five

12   decades of existence makes it by definition a novel

13   theory.  It's never been employed.  So to suggest that

14   it's obvious and it would have been obvious to Dr. Ho

15   that his conduct was covered by it is simply not the

16   case.

17         So I don't think it could possibly be argued

18   even if the government -- strike that.  I don't think

19   it can possibly be argued that the evidence here is

20   overwhelmingly or particularly strong when the statute

21   itself is so difficult to understand in its

22   application in this circumstance.

23         The statute prohibits the production of

24   special nuclear material.  Any nuclear -- if the

25   government's reading of that is any nuclear power

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

 1    plant creates special nuclear material, I think that's

 2    a novel reading of what a lay person would understand

 3    that statute to mean.

 4              Your Honor, the third factor is the history

 5    and characteristics of the defendant.  Dr. Ho is 66

 6    years old, Your Honor.  He has never been in trouble

 7    with the law.  He has no prior convictions of any

 8    kind.  Obviously as a result, he has no prior history

 9    of failure to appear.

10              He lives with his wife in a home that they

11    bought six years ago in Delaware.  There is nothing

12    about his personal characteristics that make him a

13    flight risk.

14              Now, the government has made much of the

15    fact that he has lived a significant portion of the

16    year in China.  That is true; he has.  He has

17    extensive work ties in China, and he is the father of

18    a young child in China.  But the fact is, Your Honor,

19    the government has his passport.  He can't magically

20    get out of the country.

21              THE COURT:  He can't?

22              MR. ZEIDENBERG:  Not without a passport he

23    can't.

24              THE COURT:  We've had a number of defendants

25    who have done that --

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1          MR. ZEIDENBERG:  Your Honor, I am not --

2          THE COURT:  -- gotten out of the country

3    without a passport.

4          MR. ZEIDENBERG:  Your Honor, I'm not aware

5    of a single case like this where a defendant has

6    failed to appear.

7          But if I may, Your Honor, proffer to the

8    Court.  I have -- and I gave a copy of this --

9          THE COURT:  You need to be at the podium or

10   the microphone won't get you.  I hate to harp on that,

11   but the District Judges are harping on me to make

12   everybody talk into a microphone.

13         MR. ZEIDENBERG:  That's quite all right,

14   Your Honor.

15         THE COURT:  They want to know why I can't

16   control my courtroom like they do.  So I'm going to

17   make everyone talk into a microphone until they stop

18   bugging me about it.  Okay.

19         MR. ZEIDENBERG:  I'm happy to --

20         THE COURT:  I appreciate it.

21         MR. ZEIDENBERG:  -- be confined to the

22   podium, Your Honor.

23         This is just some recent cases that we were

24   able to identify overnight.  I gave a copy to the

25   government.  These are all Chinese nationals or

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1   Chinese Americans charged recently in U.S. District

2   Courts around the country, facing either life

3   sentences or the equivalent of life sentences because

4   of the guideline sentences because the amount of --

5   the loss amounts were so vast.  All of whom were

6   released.  All of whom have appeared in court.

7          So it is I think perfectly appropriate under

8   circumstances similar to this where courts have found

9   reasonably that conditions less than pre-trial

10  detention were appropriate and have in fact succeeded.

11         And what we're proposing, Your Honor, is

12  that in addition to the government keeping Dr. Ho's

13  passport obviously, that he wear an ankle bracelet,

14  that he be confined to his home.

15         THE COURT:  You're basically asking for

16  house arrest?

17         MR. ZEIDENBERG:  Exactly.

18         THE COURT:  Okay.

19         MR. ZEIDENBERG:  And, Your Honor, the reason

20  why it's so critical is that --

21         THE COURT:  You know, you mention in your

22  brief that he would have to go to Washington, D.C., on

23  a regular basis to meet with his lawyers.  Is that

24  still your position?

25         MR. ZEIDENBERG:  Your Honor, we would

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    request that, but it's not -- that is if I were to

2    have to travel to Delaware to visit him, we'll travel

3    to Delaware to visit him.  Compared to traveling to a

4    jail in Atlanta and trying to talk to him under those

5    circumstances where we aren't able to bring in

6    computers and he isn't able to review e-mails, then,

7    you know, the difference between that is night and

8    day.  So if the Court is uncomfortable with him

9    leaving his home, then we will in a minute agree to

10   that.

11          And frankly, I've had cases like this, Your

12   Honor.  Most of this can be done over the phone.  It's

13   always helpful to meet in person, but it's not the

14   most important thing.  What is the most important

15   thing is that Dr. Ho have the ability to review the

16   evidence against him and be in a position where he can

17   explain it to his counsel, because this is

18   complicated.

19          You know, the government has provided one

20   part of the discovery, which I was able to review, the

21   synopsis of hundreds of e-mails -- hundreds -- which

22   obviously I consider the most -- I'm assuming the most

23   relevant and most critical.

24          And I need to discuss every single of one of

25   those e-mails with him in detail and try to understand

Electronically signed by Lynda Clark (601-377-188-1426)                          cb898268-ddba-481c-b629-545a534f607e

1    what was being discussed here, what was the intent,

2    what was the understanding.  The technology is

3    complicated.  The facts are complicated.

4            And, Your Honor, it's just for him to be

5    able to prepare -- help me prepare to defend him in a

6    case where he's facing a potential life sentence.

7            It's fighting with both hands behind our

8    back.  And I'm not suggesting the government is doing

9    this for ulterior reasons.  I wouldn't suggest that

10   for a second.  But the effect is that it just

11   handicaps our ability to defend the case.

12           Your Honor, the other factor, factor number

13   four, the nature and seriousness of the danger to any

14   persons of the community, again not to diminish the

15   seriousness of the statute, he is not a danger to the

16   community.  Obviously that factor weighs in favor of

17   pre-trial release.

18           Your Honor, I would also note in the

19   government's response they point out that three

20   million dollars have moved since 2009 from a bank

21   account in China to ETI in Delaware.  I suggest that

22   is another factor that suggests that in fact Dr. Ho is

23   based here in the U.S.  The money is not flowing from

24   the U.S. to China; it's flowing from China to the U.S.

25   So over the course of seven years it's three million

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1  dollars.

2          So it makes sense that if he's doing work in

3  China and being paid in China, that he would transfer

4  that money to the U.S.  There is nothing I suggest

5  that is indicative of that which would suggest that

6  the resources remain in China.  The resources

7  apparently are being moved to the U.S.

8          Now, Dr. Ho is prepared to post his house --

9  post a million dollars bond with his house as surety.

10  If that's not sufficient, he can post the entire

11  house.  That would leave his wife of 42 years, who is

12  in court today, Your Honor -- she flew from Delaware

13  here last night and is in the courtroom this

14  morning -- that would leave her homeless.

15          And again, with all due respect to the

16  government and the Indictment, and we obviously

17  realize the seriousness of this case, there is nothing

18  about this Indictment which suggests that the only

19  course would be to flee the country, that the only

20  course would be to somehow get out of the United

21  States, give up your home, give up the million

22  dollars, leave your wife homeless, because there is no

23  defense to this case.

24          THE COURT:  You're saying his home in

25  Delaware is tax appraised for at least a million

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    dollars?

2              MR. ZEIDENBERG:  Yes, Your Honor.

3              THE COURT:  Who owns the house?  Whose name

4    is it in?

5              MR. ZEIDENBERG:  I believe it's in both

6    their names, and we have the deed of the house with us

7    today, Your Honor.  And we are prepared to post that

8    with the clerk's office.

9              THE COURT:  But he doesn't own it?

10             MR. ZEIDENBERG:  He does own it.

11             THE COURT:  Solely?

12             MR. ZEIDENBERG:  It's owned totally free and

13   clear.

14             THE COURT:  But it's owned jointly with his

15   wife you're saying?

16             MR. ZEIDENBERG:  Can I have just a moment?

17             THE COURT:  Yes.

18             (Defense counsel and the defendant conferred

19   off the record.)

20             MR. ZEIDENBERG:  It's owned jointly, Your

21   Honor.

22             THE COURT:  Okay.

23             MR. DAVIES:  And I think --

24             (Defense counsel and the defendant conferred

25   off the record.)

Electronically signed by Lynda Clark (601-377-188-1426)

cb898268-ddba-481c-b629-545a534f607e

1          MR. DAVIES:  I'm sorry.  I think that there

2    may be a Line of Credit as opposed to a mortgage

3    dealing with the house, but I don't know if there is

4    any balance on that.  We discussed that in the

5    pre-trial meeting yesterday.

6          (Defense counsel and the defendant conferred

7    off the record.)

8          MR. DAVIES:  We believe that with the Line

9    of Credit the equity would still be in excess of a

10   million dollars.

11          MR. ZEIDENBERG:  In sum, Your Honor, I'd

12   suggest that this individual, Dr. Ho, with an anklet

13   bracelet -- which as the Court knows, he's being

14   monitored.  If it would to be cut off, there would be

15   a notice.  He could be apprehended.  He has no

16   passport to travel.

17          And he is going to be committed and devoted

18   to defending himself in this case.  It's going to be

19   his full-time job.  He's not going to be doing

20   anything else other than working on reviewing the

21   evidence -- the voluminous evidence in this case and

22   assisting me in preparing a defense.

23          We would be willing to submit to any other

24   pre-trial conditions that the Court or the government

25   feels are appropriate.  I frankly, you know, have

Electronically signed by Lynda Clark (601-377-188-1426)

cb898268-ddba-481c-b629-545a534f607e

1    wracked my brain for any other alternatives, but I'm

2    open to suggestions.

3         As the Court alluded to, if the Court or the

4    government have a particular concern about the idea of

5    him driving to DC or getting on a train to DC, then

6    that can be worked around.  That's not a deal-breaker

7    by any means.

8         So I think the precedent shows from other

9    cases around the country, Your Honor, that this is

10   done routinely.

11        And again, Dr. Ho is an American citizen.

12   Although he has spent extensive time in China, he is

13   an American citizen.  He has lived in this country for

14   over four decades.

15        So I think that given the fact that there is

16   no presumption in the statute, these other factors all

17   weigh in favor of release and that conditions can be

18   fashioned.

19        And finally, I would just remind -- just so

20   that everybody is aware -- that the statute does not

21   say conditions that guarantee his appearance, because

22   the only guarantee would be for him to be detained.

23   It's not an issue of whether it guarantees it.  It's

24   whether it reasonably assures it.  And I think that

25   these factors would reasonably assure his appearance.

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1          So we would ask again for the Court to

2    consider pre-trial release.

3          THE COURT:  All right.  Thank you, counsel.

4          Mr. Atchley.

5          Let me ask you first, Mr. Atchley, if you

6    agree with defense counsel's comments with regard to

7    the (g)(1) factor of a Federal Crime of Terrorism not

8    being applicable in this case?

9          MR. ATCHLEY:  I do, Your Honor.  As this

10   statute lays out within the meaning of terrorism

11   within the federal code, this is not a terrorism case.

12   It's a national security case.  It's a very serious

13   case no matter how insignificant the defense may

14   allude to the technology involved here.  But it's an

15   extremely significant case.

16         Your Honor, the defendant in this case is

17   charged with procuring and helping to obtain on behalf

18   of the Chinese government technology that it is not

19   allowed to have.

20         Now, Congress has been very explicit in

21   protecting this technology.  It enumerates several

22   countries.  The defense says this is not a case

23   involving Iran, and this is not a case involving North

24   Korea; all true, but China is on that list along with

25   Iran and North Korea.

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1           And the reason why this technology is so

2     closely held is because once it leaves our borders we

3     can't control it.  And we have no faith in the Chinese

4     or the North Koreans or the Iranians or any of the

5     other countries on this list to control this

6     technology.  It carries dual use, and it can be very

7     dangerous.

8           And he has made his living -- a very

9     lucrative living obviously.  He's willing to pledge a

10    home worth in excess of a million dollars -- obtaining

11    and selling this technology.

12          Now, the factors in (g)(1), the nature and

13    circumstances of the offenses charged, certainly is an

14    important factor.  He's facing a life sentence.

15    That's a significant factor and an appropriate factor

16    for the Court to consider.  He, quite frankly, has

17    absolutely every incentive to flee in this case.

18          If I were in China faced with a life

19    sentence with a family in the United States, and I was

20    getting ready to stand trial, and I were out of

21    custody in China, and I had an opportunity to leave, I

22    can promise you this, I am fleeing China and going

23    back to the United States.  And I think the defendant

24    in this case, if presented with that opportunity, will

25    do everything he can do.

Electronically signed by Lynda Clark (601-377-188-1426)                     cb898268-ddba-481c-b629-545a534f607e

1          Now.  He has spent -- and I don't believe

2     they contest this -- an average of 290 days a year

3     outside of the United States over the last 10 years.

4     The least amount of time he has spent outside of the

5     United States in the last 10 years was 266 days in

6     2009.  In 2007 he spent 314 days; last year in '15 and

7     in '14 301 days each.

8          This man does not live in the United States.

9     He may be a United States citizen.  But his home is in

10    China.  His family is in China.  He may have a wife

11    here, but he has another family in China with a small

12    son and he is very motivated to get back and see his

13    son.

14         I can tell you this, he also has not been

15    very straight forward with the Court about his income.

16    He says he earns approximately $1,800 a month from

17    Social Security, that his wife earns $50,000 a year,

18    and they have a small amount of money in their

19    checking account.  However, they're willing to put

20    forth a million dollars, free and clear.  Where is

21    this money coming from?

22         Taken off his person at his arrest was an

23    encrypted bank dongle from the Bank of China.  How

24    much money does he have in the Bank of China?  I have

25    no idea.  We're not allowed access to that.  The

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1    Chinese government will not provide us that

2    information.  But it is clear he has financial

3    resources outside of the United States.

4         Now, the most disturbing thing about this

5    case, and the most disturbing thing about the

6    defendant, and what I have to admit here, is that if

7    he were released on home detention with electronic

8    monitoring and a bond and everything else, the truth

9    of the matter is is that if the government of China

10   really wants him out of the United States, they're

11   going to find a way to get him out of the United

12   States.  And there's absolutely nothing I can do to

13   prevent that.  Nothing.

14        If they want, they can manufacture a

15   legitimate passport with his photograph and another

16   name or any name they choose.  And they can slip it to

17   him inside of the United States.  They can make flight

18   arrangements for him in another name.  We would never

19   know.  And the minute he cut off that bracelet he's

20   gone, and we couldn't stop him.

21        And why wouldn't he go?  Why wouldn't he go?

22   To stay here and defend this case I imagine and defend

23   his honor and run the risk of facing a life sentence,

24   or he can just go, because if he goes to China, we are

25   not getting him back.

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1        MR. ZEIDENBERG:  Your Honor, if I may just

2   have a one-minute rebuttal.

3        THE COURT:  Of course.  It's your motion;

4   you get the last word.

5        MR. ZEIDENBERG:  Thank you.

6        Your Honor, as to the last point by

7   Mr. Atchley about if the government of China were to

8   want him out and could create travel documents and

9   exfiltrate him from the country, respectfully, Your

10  Honor, that is pure speculation.  There is not one

11  shred of evidence that the government of China has any

12  interest in protecting or assisting Dr. Ho in any way,

13  shape, or form.

14       And there is no evidence that I'm aware

15  of -- and I'm sure the government would advise us if I

16  was incorrect about this -- them ever doing that on

17  behalf of any Chinese American citizen who has been

18  charged with an offense, that they participated in

19  exfiltrating them from the United States.

20       So respectfully, I don't think the Court can

21  rule on the basis of pure speculation and conjecture

22  in the absence of any tangible evidence.

23       THE COURT:  Anything else from the

24  government?

25       MR. ATCHLEY:  No, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                          cb898268-ddba-481c-b629-545a534f607e

1    THE COURT:  All right.  Anything anybody

2  else wants to say on this issue of detention?

3    MR. ZEIDENBERG:  No, Your Honor.

4    THE COURT:  Okay.  You said you've brought

5  the deed to the house?  Is that what you said?

6    MR. ZEIDENBERG:  Yes, Your Honor.

7    THE COURT:  Did you bring anything else in

8  the way of a proposed bond or cash surety bond or

9  anything like that, or are you saying your client is

10  simply going to deposit a million dollars with the

11  clerk's office?

12    MR. ZEIDENBERG:  What I had anticipated,

13  Your Honor, would be a cash surety that would be

14  secured by the title of the house.

15    THE COURT:  All right.  Well, do you have an

16  appraisal or anything like that with you?

17    MR. ZEIDENBERG:  You can look it up.  Yeah,

18  it was sold -- because of the recency of the sale I

19  looked it up and found it on the -- it was sold for

20  close to two million dollars I believe.

21    THE COURT:  Is that something you can file

22  with the Court?  I mean, yeah, I could look it up, but

23  normally the Court restricts itself to the evidence

24  presented by the parties on these matters.

25    MR. ZEIDENBERG:  Your Honor, if the Court

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1  needs a formal appraisal -- and sometimes I know that

2  that's done -- that can be done or --

3         THE COURT:  Well, I know on my more modest

4  home I get a tax bill every year from the county,

5  which has at least a tax appraisal.  I would take

6  that --

7         MR. ZEIDENBERG:  Okay.

8         THE COURT:  -- as a tax appraisal.

9         MR. ZEIDENBERG:  We could get -- we don't

10  have it in hand, but we can obviously get it.

11         THE COURT:  And that could be filed with the

12  Court.

13         MR. ZEIDENBERG:  Of course.

14         THE COURT:  All right.  The Court -- I take

15  your word for it that he has a, quote, million dollar

16  home, but I've not been presented any evidence of

17  that.  Normally we do get some evidence that it really

18  is that.

19         And Mr. Davies indicated there's a Line of

20  Credit against the house.  There may be a balance.  I

21  mean if there's is an 800,000-dollar Line of Credit

22  against it that's maxed out, that's a factor.

23         MR. ZEIDENBERG:  Okay.  That's fine, Your

24  Honor.  We'll be happy to provide the details of that

25  with the Court.  I may not have it for you today, but

Electronically signed by Lynda Clark (601-377-188-1426)                cb898268-ddba-481c-b629-545a534f607e

1   we will get the tax records or the tax assessment and

2   provide them.

3          THE COURT:  And how much time do you want to

4   do that, counsel?

5          MR. ZEIDENBERG:  Can I have a moment?

6          THE COURT:  Yes.

7          (Defense counsel with the defendant

8   conferred off the record.)

9          MR. ZEIDENBERG:  Your Honor, we may be able

10  to get the sale documents from the house -- it was

11  fairly recent, six years ago, five years ago -- which

12  would have an assessment of what they paid for it if

13  that would satisfy the Court.

14         THE COURT:  I would like to see the tax

15  appraisal from the local taxing authority.

16         MR. ZEIDENBERG:  We will get that as well.

17         THE COURT:  And also if there's a proposed

18  surety bond or any type of bond arrangement that

19  you're actually proposing, I would like to see that as

20  well.

21         MR. ZEIDENBERG:  Okay.  That's fine, Your

22  Honor.

23         THE COURT:  Or if he's just going to deposit

24  a million dollars in cash, I'd like to know that.

25  What is actually the proposal?

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1          MR. ZEIDENBERG:  He won't be able to do that

2    because he doesn't have the -- the Line of Credit

3    isn't sufficient to do that, but he could post the

4    entire house -- the value of the house, which would be

5    well in excess of a million dollars.

6          THE COURT:  All right.  Well, then we would

7    like to see that.

8          MR. ZEIDENBERG:  Your Honor, I'd be happy to

9    get those documents and show them to the government

10   and see if they're satisfied.  We could submit it to

11   the Court or the clerk's office, but we would need --

12   I don't know -- a day or two to get these things

13   together.

14         THE COURT:  I understand.  That's why I'm

15   asking --

16         MR. ZEIDENBERG:  Okay.  Very well.  Are you

17   asking how much time specifically?

18         THE COURT:  Do you want me just to give you

19   a week?  I mean I just need to have an idea.  We all

20   have to have goals to shoot for.

21         MR. ZEIDENBERG:  How about -- today is

22   Tuesday.  How about Friday?

23         THE COURT:  That would be great.  I would

24   appreciate that.

25         MR. ZEIDENBERG:  All right.  Thank you, Your

Electronically signed by Lynda Clark (601-377-188-1426)                    cb898268-ddba-481c-b629-545a534f607e

1   Honor.

2          THE COURT:  I don't want the decision of

3   ruling on this to take any longer than necessary.

4          Okay.  Anything else?  None.

5          Thank you, counsel.  I appreciate your

6   presentations on this matter and the briefing, which

7   was excellent.

8          All right, Madam Clerk.

9          THE COURTROOM DEPUTY:  All rise.  This

10  Honorable Court stands in recess.

11         (End of Proceedings.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Electronically signed by Lynda Clark (601-377-188-1426)     cb898268-ddba-481c-b629-545a534f607e

1                    REPORTER'S CERTIFICATION

2    STATE OF TENNESSEE  )

3    COUNTY OF KNOX       )

4        I, LYNDA L. CLARK, LCR #034, RMR, CRR, Court

5    Reporter and Notary Public, in and for the State of

6    Tennessee, do hereby certify that the above Court

7    Hearing was reported by me, transcribed by me, and

8    that the foregoing 35 pages of the transcript is a

9    true and accurate record to the best of my knowledge,

10   skills, and ability.

11       I further certify that I am neither kin nor of

12   counsel to any of the parties, nor in any way

13   financially interested in the outcome of this case.

14       I further certify that I am duly licensed by the

15   Tennessee Board of Court Reporting as a Licensed Court

16   Reporter as evidenced by the LCR number and expiration

17   date following my name below.

18       IN WITNESS WHEREOF, I have hereunto set my hand

19   and affixed my Notarial Seal this 20th day of June,

20   2016.

21                      _Lynda L. Clark_____
                        LYNDA L. CLARK, LCR #034
22                      Expiration Date:  06/30/16
                        N.P. Commission Expires:  8/31/19
23                      Miller & Miller Court Reporters
                        12804 Union Road
24                      Knoxville, Tennessee  37934
                        Phone:  865-675-1471 / 675-6398
25                      Email:  JMccon3590@aol.com

Electronically signed by Lynda Clark (601-377-188-1426)

cb898268-ddba-481c-b629-545a534f607e