UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,       )
                                )
v.                              )          No.:  3:16-CR-46-TAV-HBG-1
                                )
SZUHSIUNG HO,                   )
                                )
                Defendant.       )

## MEMORANDUM OPINION AND ORDER

This criminal action is before the Court on the defendant's Motion to Vacate
Order of Detention [Doc. 33], and the defendant's Motion to Strike Government's
Supplemental Pleading [Doc. 48].

The defendant seeks to vacate the Order of Detention issued by Magistrate Judge
Guyton on June 17, 2016 [Doc. 30].  The government filed a response in opposition to
the motion to vacate [Doc. 34].  The defendant then filed a supplemental brief [Doc. 37].
On August 16, 2016, the Court held a hearing on the motion to vacate [Doc. 44].  After
the hearing, the government filed a supplemental response in opposition [Doc. 47].  The
defendant then filed a Motion to Strike Government's Supplemental Pleading [Doc. 48]
and within that filing also included a substantive reply to the supplemental response.  The
defendant has since filed another supplemental brief to support his motion to vacate [Doc.
57], to which the government responded [Doc. 60].

The Court has considered the filings of the parties, including the initial filings
before the magistrate judge, as well as the arguments made at the hearings on June 15,

2016, and August 16, 2016.[1]   For the reasons that follow, the Court will deny the defendant's motion to strike [Doc. 48] and deny the defendant's motion to vacate [Doc. 33].[2]

## I.    Background

On June 15, 2016, the defendant appeared for a detention hearing before Magistrate Judge Guyton [Doc. 27].  After weighing the factors for and against detention, Judge Guyton concluded that the defendant must be detained pending trial and issued an Order of Detention to that effect [Doc. 30].  The defendant now moves to vacate that order [Doc. 33].

The defendant asks the Court to consider that certain circumstances have changed since the magistrate judge issued the Order of Detention.  The first changed circumstance is that the defendant has been able to procure additional sureties [Doc. 33 p. 5].

---

[1]   The Court also considers the Pretrial Services Report presented by the United States Probation Office which the magistrate judge attached as a sealed exhibit to the Order of Detention [Doc. 30-1].   The United States Probation Office recommends detention of the defendant [*Id.*].

[2]   During a September 15, 2016, hearing with Magistrate Judge Guyton on the defendant's pending motion to dismiss, defense counsel stated that he had spoken to counsel for the government that afternoon regarding additional conditions for release [Doc. 59 p. 110]. Defense counsel further represented that counsel for the government indicated his willingness to consider those conditions and to discuss them further with defense counsel [*Id.*].  On September 21, 2016, the defendant filed a supplemental brief proposing those additional conditions [Doc. 57].  In this brief, the defendant stated that "[t]he defense has provided the license and insurance information for this security company to the government for review" [*Id.* at 3].  On October 4, 2016, the government filed a response informing the Court that "[t]he United States is reviewing the proposed additional condition of a 24-hour/7 days a week security guard at defendant's expense and we are discussing this issue with counsel for the defendant" [Doc. 60 p. 2].  On October 7, 2016, the defendant filed a notice with the Court indicating that the parties' discussions regarding conditions for release have been unsuccessful [Doc. 65 p. 1].  These events resulted in a brief delay of the Court's disposition.

Specifically, his sister-in-law and childhood friend have pledged money secured by their respective homes [*Id.*]. The defendant can now provide the Court with a fully secured $3,000,000 bond as opposed to the $1,000,000 bond that the magistrate judge considered [*Id.*].

In addition, the defendant asks the Court to take his health into consideration [*Id.*]. Subsequent to the hearing before the magistrate judge, the defendant received a letter from his cardiologist providing that due to a heart condition, the cardiologist recommends that the defendant be subjected to the least stressful environment possible [Doc. 33-1].

The defendant has also provided the Court with recently produced evidence in the form of interviews with engineers who worked with the defendant that may support the defendant's innocence [Docs. 37, 37-1–37-10]. Furthermore, the defendant argues that the government has abandoned its core argument for detaining the defendant, that is, that the defendant faces a potential life sentence if convicted [Doc. 57 pp. 1–3].

Additionally, the defendant offers new conditions for bail [*Id.* at 3]. The defense identified a licensed security company to guard the defendant at all times and ensure that he never leaves his home absent Court approval [*Id.*]. The defendant submits that he will bear the expense for the security company in its entirety [*Id.*].

The defendant further requests that, should the Court not agree to his release, he be moved back to Robert A. Deyton Detention Facility in Atlanta, where he was previously detained [*Id.* at 3–4].

3

## II.    Motion to Strike

As an initial matter, the defendant moves to strike the government's supplemental response in opposition of the defendant's motion to vacate.  The defendant argues that the government's supplemental brief should be stricken for two reasons.  First, that the government "violated Local Rule 7.1(d) by filing excessive pages" [Doc. 48 p. 1]. Second, that "the government violated the Court's order, which allowed a limited supplemental submission identifying specific examples of Asian-Americans who violated the terms and conditions of their bail and fled the country with the help of a foreign government" [*Id.*].  The Court will address each of these arguments in turn.

As to the first argument, Local Rule 7.1(d) provides that "[n]o additional briefs . . . shall be filed without prior approval of the Court, except that a party may file a supplemental brief of no more than 5 pages to call to the Court's attention developments occurring after a party's final brief is filed."  Consequently, as provided in Rule 7.1(d), a party may file a five-page supplemental brief without leave of the Court if it includes new developments.  In a situation where the Court provides leave, the five-page limitation does not apply.  During the August 16, 2016, hearing, the Court granted the government leave to file a supplemental brief.  As such, the five-page limitation does not apply and the Court declines to strike the supplemental brief on that basis.

The defendant also moves to strike the supplemental brief because it goes beyond providing examples of Asian-Americans who were granted bail but failed to appear in court.  The Court notes, however, that when asking the government to file a supplemental

4

brief, the Court's inquiry was not so narrow. During the hearing, the Court asked the government to provide "contrary cases or examples" to the examples that the defendant included in its briefing [Doc. 49 p. 24]. The Court did not, as the defendant argues, limit its inquiry to identifying specific examples of Asian-Americans who violated the terms and conditions of their bail and fled the country with the help of a foreign government, as the defendant argues [Doc. 48 p. 1]. Instead, the Court requested contrary cases or examples—a very broad request.

In addition, the government, out of an abundance of caution, moves the Court pursuant to Local Rule 7.1(d) for leave to treat the filed document as a supplemental brief [Doc. 47 p. 1 n.1]. As such, the government requests leave of the Court to file a brief that includes arguments in addition to addressing the Court's initial inquiry. The Court finds that the government's additional summary of its arguments aids the Court in its final determination. As such, the Court will grant the government's motion for leave and will not strike the brief from the record. The Court further notes that the defendant was able to provide a substantive reply to the government's arguments contained in the brief [Doc. 48]. As such the defendant was not prejudiced by the government's supplemental response. The Court will, therefore, deny the defendant's motion to strike [Doc. 48], and considers the government's supplemental brief in making its determination on the defendant's motion to vacate.

### III.    Motion to Vacate Order of Detention

The defendant moves to vacate the magistrate judge's order of detention. "If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court reviews *de novo* a magistrate judge's order of pretrial detention. *United States v. Blair*, No. 3:15-CR-56, 2015 WL 3486026, at *1 (E.D. Tenn. June 2, 2015) (citations omitted); *see also United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013), *aff'd*, No. 13-6008 (6th Cir. Nov. 1, 2013). In making its determination, the Court may receive additional evidence or simply rely upon the record of the earlier detention hearing. *United States v. Martinez*, No. 1:12-cr-210, 2012 WL 4815018, at *1 (W.D. Mich. Oct. 10, 2012) (citations omitted).

Under the Bail Reform Act, if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). The Sixth Circuit has stated it is "the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010).

Here, the government seeks detention based on the defendant's risk of flight [Doc. 47 p. 2]. In such a case, "the government must prove risk of flight by a preponderance of the evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). Because the

6

magistrate judge rested his detention order on risk of flight and since the government does not seek detention based on dangerousness, risk of flight is the only issue discussed herein.[3]

In determining whether the government has met its burden of persuasion, the Court must take into account the available information concerning, among other factors, the nature and circumstances of the offenses charged; the person's history and characteristics, including the person's character, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, and criminal history; and the weight of the evidence against the person. 18 U.S.C. § 3142(g); *Stone*, 608 F.3d at 946. The Court will address each of these factors in turn.

## A.    Nature and Circumstances of the Offenses Charged

As to the nature and circumstances of the offenses charged, Count One of the Indictment charges the defendant with conspiring to illegally develop special nuclear material outside of the United States in violation of 42 U.S.C. §§ 2077(b) and 2272(a) [Doc. 3]. Count Two charges the defendant with conspiring to illegally act as an unregistered agent of a foreign government in violation of 18 U.S.C. § 951 [*Id.*]. Because the defendant is alleged to have committed Count One "with the intent to secure an advantage to the People's Republic of China" he is facing a maximum sentence of life in prison if convicted [*Id.*; Doc. 49 p. 4]. 42 U.S.C. § 2272(a).

---

[3]    The magistrate judge found, and the parties do not dispute, that the § 3142(e) presumption in favor of detention does not apply in this case. And having reviewed the record, the Court notes its agreement with the magistrate judge's finding that the government has not shown by clear and convincing evidence that the defendant presents a danger.

7

The government argues that the defendant's maximum sentence is strong evidence of his motive to flee. Courts have recognized that defendants facing severe penalties such as life imprisonment have a greater incentive to flee. *See, e.g.*, *United States v. Abad*, 350 F.3d 793, 799 (8th Cir. 2003) (finding that facing a potential maximum of thirty years' imprisonment is strong evidence of incentive to flee); *United States v. Khraizat*, No. 00-2128, 2000 WL 1769637, at *2 (6th Cir. Nov. 17, 2000) (considering the defendant's "length[y] sentence if convicted"); *United States v. Nichols*, 897 F. Supp. 542, 547 (W.D. Okla. 1995), *aff'd* 1995 WL 430191 (10th Cir. July 21, 1995) ("The prospect of a lengthy prison term, life imprisonment or the death penalty provides Defendant with a great incentive to flee."); *see also United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) (on appeal from an order of detention pending sentencing, the court determined that the defendant's age of seventy combined with the length of his potential sentence was evidence of incentive to flee).[4]

In response to the government's argument that facing a potential sentence of life imprisonment should weigh in favor of detention, the defendant points out that life imprisonment is the maximum sentence, and it is not mandatory. The defendant argues that life imprisonment is not likely under the circumstances here. The Court notes,

---

[4] The Court is cognizant of the fact that the defendants in the cited cases were charged with very different crimes from the charges this defendant faces. The defendant appears to argue that the Court should not consider cases where defendants were charged with violent crimes as they are not analogous to the instant case [*See* Doc. 48 p. 3–4]. The Court finds, however, that even though the defendants in the cited cases were charged with different offenses from the instant defendant, the cases still stand for the proposition that courts should consider potential sentences in determining whether there is incentive for a defendant to flee.

however, that courts and Congress alike have previously looked to the statutory maximum of charged offenses, rather than the minimum or likely sentence, when considering detention.[5]  *See* 42 U.S.C. § 3142(e)(3); *Abad*, 350 F.3d at 799; *Khraizat*, 2000 WL 1769637, at *2; *Nichols*, 897 F. Supp. at 547.

In arguing that he is not likely to receive a sentence of life imprisonment, the defendant places emphasis on the case of *United States v. Oakley*, No. 3:07-CR-88 (E.D. Tenn. June 2, 2009), where this Court sentenced a defendant to six years' imprisonment for attempting to sell to a foreign national classified components for a uranium enrichment plant.  The defendant points out that this facility's "only purpose [was] to produce special material" [Doc. 33 p. 10].  The Court notes, however, that in *Oakley*, the defendant pleaded guilty to an offense that had a statutory maximum of only ten years, and the parties agreed to a sentence of six years pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) [Doc. 89, *Oakley*, No. 3:07-CR-88].  In contrast, here, the maximum sentence is life imprisonment.  The circumstances in *Oakley*, therefore, are distinguishable, and the Court does not consider the sentence in *Oakley* as evidence that the defendant in this case would receive a similar sentence if convicted.

The defendant also argues that the government has abandoned its position that the defendant faces a potential sentence of life in prison.  On September 15, 2016, Magistrate

---

[5]  The Court points out that although the defendant is not charged with an offense that carries a rebuttable presumption of detention pending trial, in determining which offenses are subject to that rebuttable presumption, Congress looked at the maximum sentence, rather than the minimum or likely sentence, for crimes charged.  *See* 42 U.S.C. § 3142(e)(3) (including a qualification for certain offenses that the maximum term of imprisonment is at least ten or twenty years).

Judge Guyton held a hearing on the defendant's pending motion to dismiss [Doc. 56]. During this hearing, in response to the defendant's argument that the government's interpretation of the charged statutes would lead to absurd results, the government stated: "[T]he defense talks a lot about the death penalty and life in prison. But that is a maximum. It's not a minimum. An appropriate sentence can be – obviously, in any statute, there's a range of violations, and not every statute -- not every violation will get the maximum" [Doc. 59 p. 35].

Based on these statements, the Court does not find that the government has abandoned its position regarding the defendant's potential sentence if convicted. The government has repeatedly stated that a sentence of life imprisonment is the maximum sentence [Doc. 47 p. 3], and has noted that there is only a "possibility" that the defendant would face this sentence [Doc. 26 p. 1]. Indeed, the government has never argued that the defendant will receive the maximum sentence if convicted. The Court also notes that even if the defendant does not receive life imprisonment if convicted, he may still face a very lengthy sentence. As such, the defendant's argument that the government has abandoned its position regarding the effect a potential sentence should have on the detention analysis is without merit.

Based on the potential lengthy sentence the defendant could face if convicted, the Court determines that the nature and circumstances of the offenses charged weigh in favor of detention.

10

## B.    History and Characteristics

The second factor the Court must consider is the defendant's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceeding," among other circumstances. 18 U.S.C. § 3142(g)(3)(A). The government argues primarily that the defendant's lack of ties to the community, significant ties to foreign countries, and access to financial resources are evidence of the defendant's significant risk of flight and weigh in favor of detention.

Looking first at family and community ties, the Court notes that the defendant does not appear to have any ties to Tennessee. While not dispositive, this fact is evidence of a risk of flight. *See, e.g., United States v. Guerra-Rodriguez*, 59 F.3d 171 (Table), No. 95-5773, 1995 WL 378552, at *1 (6th Cir. June 23, 1995) (considering "lack of ties to Tennessee as [a] factor[] in evaluating the risk of flight" of a defendant); *United States v. Ishraiteh*, 59 F. Supp. 2d 160, 163 (D. Mass. 1999) (considering that the defendant's ties to the charging district were "tentative at best"); *United States v. Cashin*, 739 F. Supp. 1107, 1111 (E.D. Mich. 1990) (the fact that the defendant had "no professional or financial ties to the community other than his illegal activities" was "a very serious obstacle to [the defendant's] release pending trial"). Some courts, however, have read "communities ties," within § 3142(g)(3)(A) to include, more generally, ties to the United

States rather than the charging district. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (citing *Truong Dinh Hung v. United States,* 439 U.S. 1326, 1329 (1978)).

Here, the defendant was born in Taiwan, but became a naturalized American citizen in 1983 [Doc. 33 p. 15]. He has been married to his wife, Annie Ho, for forty years, and they have lived in Wilmington, Delaware since 1988 [*Id.*]. While the defendant has a home in Wilmington, he spends on average 300 days a year outside of the United States [Doc. 49 p. 18]. In the last ten years, he has never been in the United States in any one calendar year for more than ninety-nine days [*Id.* at 18–19]. Furthermore, in the last few years, the number of days the defendant spends in the United States has been gradually decreasing [*Id.* at 19]. In 2014 and 2015, for example, the defendant spent only sixty-four days each year in the United States [*Id.*].

When away from the United States, the defendant spends his time in China and Taiwan [*Id.*; Doc. 30-1 p. 2]. The defendant worked in China and was employed by the Chinese government [Doc. 49 p. 18]. He has a family there, including a nine-year-old son and his son's "surrogate" mother [*Id.*]. In addition, the defendant maintains a close relationship with his mother and two brothers all of whom live in Taiwan [Doc. 30-1 p. 2]. The defendant re-obtained his dual-citizenship status in 2011, as a Taiwanese citizen [*Id.*].

The Court recognizes that numerous courts have found that dual citizenship is a factor that weighs in favor of detention. *See, e.g., United States v. Amirnazmi*, No. 08-429-01, 2008 WL 4925015, at *2 (E.D. Pa. Nov. 18, 2008) (detaining the defendant and

12

providing that "any one that has dual passports, dual citizenship with passports even though they are retained by the federal government, is always suspect of having an available avenue to flee"); *United States v. Saani*, 557 F. Supp. 2d 97, 100 (D.D.C. 2008) (detaining the defendant and expressing concern with his dual citizenship).

The Court further notes that another defendant in this case is the China General Nuclear Power Company, which is essentially the Chinese government [Doc. 49 pp. 18–19]. Consequently, the defendant has significant ties to the government of China. Furthermore, should the defendant flee to China, the United States cannot procure his return because there is no extradition treaty with China [*Id.* at 21]. These factors combined suggest opportunities for flight. *See Truong Dinh Hung v. United States*, 439 U.S. 1326 (1978).

The Court turns next to the defendant's financial resources and to evidence of the defendant's lack of candor regarding these resources. When initially asked about monthly income, the defendant approximated his income at $1,800 a month [Doc. 30-1 p. 3]. He also stated that he was unsure of the amount of income in his 401k and that he has very little money in his savings and checking account [*Id.*]. Despite these representations, there is evidence that over the course of five years, the defendant has wired over $3.8 million from one of his bank accounts in China to a bank account he maintains in the United States [Doc. 49 pp. 17–18]. He has also managed to purchase, pay for, and upkeep a home in Delaware worth approximately $2,000,000, maintain a separate family and residence in China, and now retain several attorneys to aid in his

defense [*Id.* at 18–19]. In addition, when arrested, the defendant had a random code generator designed to enable him to remotely access accounts with the Bank of China [*Id.* at 18]. After analyzing the defendant's U.S. tax returns, the government notes that the defendant has not disclosed any of this additional income or the existence of these foreign bank accounts as he is required to by law [Doc. 47 p. 5].

Furthermore, the defendant now reports that he is willing to pay for a licensed security company to guard his home at all times for several months [Doc. 57 p. 3; Doc. 57-2]. According to the attached proposal, these services would cost $16.00 per hour [Doc. 57-2]. For the time period requested, the defendant would need to pay approximately $45,000 for this security service [*See id.*].

In light of the information before the Court regarding the defendant's finances, it appears the defendant has not been completely forthright regarding his income and bank accounts. The Court finds that there is substantial evidence the defendant has significant financial resources, particularly in China.

The Court finds that this fact, coupled with the defendant's ties to other countries, is strong evidence that the defendant has both the motive and the means to flee. *See United States v. Martinez*, 102 F. Supp. 2d 39, 42 (D. Mass. 2000) (considering the defendant's assets abroad as evidence of means to flee); *see also Madoff*, 316 F. App'x at 59 (on appeal from an order of detention pending sentencing, the court considered the fact that the defendant had a residence abroad and ample opportunity to hide substantial resources outside the country as evidence that the defendant had the means to flee).

In consideration of the other relevant factors, the Court notes that the defendant submitted several letters of support as evidence of his upstanding character [*See* Docs. 37-11–37-16]. These letters indicate full confidence that the defendant did not intend to violate the law and would not attempt to evade the law [*See id.*]. In regard to his physical and mental condition, the defendant has provided evidence of his heart condition and how the stress of detention could exacerbate that condition. The Court also notes that the defendant does not have a criminal history.

While these latter factors weigh in favor of release, in light of the evidence that the defendant has significant ties to China and Taiwan and substantial financial resources, the Court finds that the history and characteristics of the defendant exhibit a significant risk that the defendant will flee.

### C. Weight of the Evidence

The third factor the Court looks at in making its determination is the weight of the evidence against the defendant. The weight of the evidence factor goes to the weight of the evidence of flight risk, not the weight of the evidence of the defendant's guilt. *See Stone*, 608 F.3d at 948 (noting that "the weight of evidence against the person 'deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community'" (quoting *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985))); *United States v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018, at *8 (E.D. Tenn. Mar. 25, 2011) ("[T]his factor goes to how convincing the government's arguments of dangerousness and risk of flight are.").

15

The defendant seeks to have the Court consider evidence of the defendant's guilt, or lack thereof, as evidence that the defendant is not likely to flee. The Sixth Circuit, however, has specifically instructed that this factor does not to go "the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. In fact, § 3142 "neither requires nor permits a pretrial determination that the person is guilty." *United States v. Winsor*, 785 F.2d 755, 758 (9th Cir. 1986). Rather, "evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear." *Id.*

The defendant argues that there are many legal and factual issues in this case to support that he will not be convicted, and that the reasonable thing for him to do is to prepare for trial rather than flee [Doc. 49 p. 13]. In response, the government notes that there is a significant amount of evidence to support the defendant's guilt, and in particular, significant evidence regarding the defendant's alleged cover-up of his actions [*Id.* at 16–17].

The Court is cognizant of these issues, and takes notice that the defendant's motion to dismiss the indictment is currently pending [Doc. 36]. The Court, however, does not find that the fact that the defendant is maintaining his innocence negates an inclination to flee considering that he faces a potential maximum life sentence if convicted, has no ties to Tennessee, has strong ties to other countries, and the evidence of his access to substantial financial resources.

**D. Additional Considerations**

In sum, the Court finds that the factors set forth in § 3142(g) support that the defendant is a flight risk. The defendant, however, has submitted additional considerations that do not fall directly into one of the categories discussed.

First, the defendant argues that release in this circumstance is supported by precedent. The defendant puts forth a list of examples of Chinese and Taiwanese-Americans and Chinese and Taiwanese nationals who were charged with "espionage" offenses, or significant fraud offenses, were released on conditions, and subsequently appeared [Doc. 33 pp. 11–12]. The Court notes, however, that the government did not seek detention in many of the cases cited, and, to the Court's knowledge, only one of the defendants faced a potential maximum sentence of life imprisonment. In contrast, here, the government has consistently sought detention. In addition, the Chinese government is essentially the defendant's alleged coconspirator in this case. As such, the ties the defendant has to the Chinese government are very substantial and relate directly to the charged offenses. The Court, therefore, finds that the ties to China in this case are more significant than the ties in most of the cases cited. As a whole, therefore, the Court finds the cases cited distinguishable.

The defendant also argues that even if the government has shown an opportunity for flight, the government has not shown any inclination to flee. In support of this argument, the defendant cites to the Supreme Court case *Truong Dinh Hung v. United States*, 439 U.S. 1326 (1978). In *Truong Dinh Hung*, the Supreme Court distinguished

17

between opportunity for flight and inclination to flee. *Id.* at 1329 (analyzing a bail application pending appeal and releasing the defendant). The Court stated that the following factors in that case suggested opportunity for flight: (1) maintaining contact with individuals in the Vietnamese government, (2) the fact that the defendant has not established permanent residence in the United States, and (3) that if the defendant fled to Vietnam, the United States could not procure his return. *Id.* In finding that the defendant had no inclination to flee, however, the Court pointed out that he had resided in the United States continuously for over a decade. *Id.* The Court also indicated that the defendant faced a maximum of only fifteen years imprisonment. *Id.* at 1327 n.4.

In this case, the government has shown that the defendant has opportunities for flight and an inclination to flee. The defendant has close ties to the Chinese government and to other individuals in China and Taiwan. While the defendant has a permanent residence in the United States, he has one in China as well and spends significantly more time at his Chinese residence. The United States also does not have an extradition treaty with China, and could not procure the defendant if he fled there. All these factors suggest opportunities for flight.

Looking at the defendant's inclination to flee, the Court notes that the defendant essentially lives in China and has a son there. As such, he is inclined to spend more time in China even when he is not facing prosecution in the United States. He also faces a potential maximum sentence of life in prison as opposed to the fifteen years the defendant faced in *Truong Dinh Hung*. As such, the Court finds that *Truong Dinh Hung* is not an

18

analogous case and that the government has provided sufficient evidence of the defendant's inclination to flee.

The defendant also argues that because this is a complex case, defense counsel cannot adequately prepare for trial without the full and complete assistance of the defendant and such assistance will not be possible if the defendant is detained. The defendant does not cite any authority for the proposition that the Court should consider the complexity of a case in determining whether a defendant should be detained. The Court's inquiry is whether there are conditions that will reasonably assure the appearance of the defendant. 18 U.S.C. § 3142(e)(1). It is not uncommon for a case to have very complex facts and discovery. As this fact does not pertain to whether the defendant will appear, the Court will not consider these circumstances in its analysis.

### E. Proposed Conditions of Release

After consideration of all the factors before the Court, the Court finds that the defendant presents a significant flight risk. The Court must, therefore, consider whether "no condition or combination of conditions will reasonably assure the appearance" of the defendant in light of his flight risk. 18 U.S.C. § 3142(e)(1).

In addition to the standard conditions for release, the defendant proposes the following conditions: (1) a licensed security company to guard the defendant at all times; (2) $3,000,000 surety bond secured by the homes of the defendant and his wife, the home of the defendant's sister-in-law, and the home of the defendant's childhood friend; (3) an electronic ankle bracelet; and (4) continued surrender of the defendant's passport [Doc.

19

57 p. 3 n.4].  The Court notes that the magistrate judge considered a surety bond of only $1,000,000, and did not consider the condition of the licensed security company.

Although the Court is mindful of the increased amount in bond the defendant can provide, given the evidence that the defendant has access to substantial financial resources, the Court does not find that the bond amount greatly affects its analysis.  The defendant states that he would not be willing to forego $3,000,000, and leave his sister-in-law, childhood friend, and wife homeless [Doc. 49 p. 8].  In light of the evidence that there is a significant amount of assets yet to be discovered in this case, as well as the potential maximum sentence the defendant faces, the Court does not find the surety amount especially significant.  *See Abad*, 350 F.3d at 799 (the fact that the defendant faced a maximum sentence of thirty years "reduces the significance of the surety amount"); *Cashin*, 739 F. Supp. at 1113 (finding that condition that the defendant's parents post their residence as security would not motivate the defendant not to escape due to penalties he faced and the evidence of his access to substantial funds).

Regarding the additional condition of a private security firm, the Court notes that in situations where the government does not select the security company, "there are issues regarding the nature of the security that would be provided by such an arrangement, and the additional costs to the government in supervising such an arrangement."  *United States v. Banki*, 369 F. App'x 152, 153–54 (2d Cir. 2010) (ordering detention pending trial when the defendant proposed a private security arrangement because of the lengthy maximum penalties to which the defendant was

20

exposed and the strength of his ties to Iran). Here, the government did not select the security company, and the government has not agreed to this condition. Given the lengthy maximum penalties, the defendant's ties to foreign countries, and the evidence of the defendant's additional significant assets, the Court does not find that the addition of a private security firm will reasonably assure the appearance of the defendant. 18 U.S.C. § 3142(e)(1).

Upon *de novo* review of the parties' arguments before the magistrate judge, as well as the additional arguments, the § 3142(g) factors and potential conditions of release, and the record in this case, the Court finds that pretrial detention is warranted. *See United States v. Mercedes*, 254 F.3d 433, 437 (2d Cir. 2001) (noting that electronic monitoring, home detention, and assurances from family members that the defendant will comply with pretrial release are insufficient in the face of strong evidence that defendant is a flight risk); *Khraizat*, 2000 WL 1769637, at \*2 (ordering detention where the defendant faced a lengthy sentence, had family abroad, and there was "some indication in the record that he may have significant assets overseas"); *United States v. Whyte*, 897 F.2d 989, 996 (9th Cir. 1990) (ordering detention where the defendants were charged with international fraud crimes that "required intelligence" and carried severe penalties, had limited ties to the United States, and had unexplained access to large amounts of money). The defendant's motion to vacate will, therefore, be denied.

### F. Request to Move to a Different Detention Facility

Should the Court determine that the defendant remain detained, the defendant requests that he be moved back to the Robert A. Deyton Detention Facility in Atlanta, where he was previously detained. The defendant is currently being held in Blount County Jail.

In support of this request, the defendant notes that this is a complex prosecution with voluminous discovery and that his current conditions of confinement do not allow the defendant to review such materials. The defendant further provides that he has not been able to speak with his counsel on an unrecorded line since shortly before the August 16, 2016, hearing.

The defendant argues that his conditions of detention are in violation of the Order of Detention, which provides that "[t]he Defendant must be afforded a reasonable opportunity to consult privately with defense counsel" [Doc. 30 p. 5]. The Order further states that, "to the extent practicable," the defendant should be kept separate "from persons awaiting or serving sentences or held in custody pending appeal" [*Id.*].

For these reasons, the defendant requests that he be moved back to the Robert A. Deyton Detention Facility in Atlanta. The government does not appear to have an objection to this request, but notes that the ultimate decision where to house the defendant should be left to the United States Marshal Service. In light of the Court's

decision to affirm the Order of Detention, the parties should resolve other issues regarding conditions of detention with the magistrate judge.[6]

## IV. Conclusion

For the reasons discussed herein, the Court hereby **DENIES** defendant's Motion to Strike Government's Supplemental Pleading [Doc. 48], and **DENIES** defendant's Motion to Vacate Order of Detention [Doc. 33]. The defendant shall remain detained pending trial.

To the extent the defendant has concerns regarding his conditions of detention, the parties **SHALL** raise such concerns with United States Magistrate Judge H. Bruce Guyton.

ENTER:

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that the parties participated in a status conference with Magistrate Judge Guyton to discuss these issues on October 7, 2016 [Doc. 66].