IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>vs.<br><br>Szuhsiung Ho a/k/a Allen Ho,<br><br>    Defendant. | Case No. 3:16-CR-00046 |

**DEFENDANT ALLEN HO'S MOTION
<u>TO COMPEL DISCOVERY</u>**

I. **PRELIMINARY STATEMENT**

Defendant Allen Ho ("Dr. Ho") respectfully moves the Court under *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 16 of the Federal Rules of Criminal Procedure for an order compelling disclosure of the categories of documents listed below. In particular, Dr. Ho requests the following *material* information that is *favorable* to the defense:

Specific Authorization Documents

1. All Part 810 authorizations covering technology or assistance to China that were valid during any part of the time frame of the alleged conspiracy (1997–present) that are not in the DOE's public reading room in Washington, D.C.

2. For each Part 810 authorization that was valid during any part of the time frame of the alleged conspiracy (1997–present), (a) the applications for those specific authorizations, (b) licensing-related correspondence between the applicant and DOE, (c) internal memoranda that DOE (or other government) staff prepared for the Secretary of Energy's review justifying a grant of the specific authorization, and (d) the non-proliferation and other assurances that the Chinese government provided—typically through diplomatic notes—to the U.S. government.

Commercial Nuclear Reactor Documents

1. Information describing, detailing, or suggesting that plutonium generated from commercial nuclear light-water reactors designed to make electricity (*i.e.*, "utilization facilities" under the Atomic Energy Act) in China has or is being used to make a nuclear weapon, or information to the contrary.

2. Information describing, detailing, or suggesting that China sources its plutonium for nuclear weapons at facilities for which Dr. Ho or any of the co-conspirators allegedly provided technology or assistance, or information to the contrary.

3. Information describing, detailing, or suggesting that the U.S. government is aware of the specific facilities where China makes "special nuclear material," and that these facilities are not commercial nuclear power facilities owned or operated by China General Nuclear Power Company ("CGNPC") or any of its subsidiaries.

There can be no reasonable dispute that the first two categories of documents (the "Specific Authorization Documents") contain *Brady* material. The Atomic Energy Act requires the Secretary of Energy to find that a proposed export of technology is not inimical to the interests of the United States *before* he grants a specific authorization. *See* 42 U.S.C. §

1

2077(b)(2). The Secretary's "non-inimicality" finding is technology-specific and foreign country-specific. The plain reading of the statute confirms that once the Secretary makes a non-inimicality finding for export of a particular nuclear technology to China, there is no statutory requirement for a second approval for that same technology to be exported to China. The government alleges that CGNPC is essentially the Chinese government. *See* ECF No. 3 ¶ 2. Thus, if the Secretary issued a specific authorization to China for a technology alleged to be covered by the Indictment, then, as a matter of law, Dr. Ho would not also need ***another*** specific authorization to share that same technology with China. This would constitute a complete defense to the Indictment.

But the specific authorizations themselves are only part of Dr. Ho's discovery request. The specific authorizations are one to two pages in length, and do not include the authorization request, do not include the DOE's view on China's nuclear power program, and do not reveal what specific assurances were provided by the Chinese government. In fact, the details of the technology that the Secretary approves for transfer to China are contained in: (1) specific authorization applications, which are incorporated-by-reference in the specific authorizations (and licensing-related correspondence between the applicants and DOE); (2) internal memoranda that DOE (or other government) staff prepare for the Secretary's review that justifies the "non-inimicality finding"; and (3) non-proliferation assurances that the Chinese government provides—typically through diplomatic notes—to the U.S. government. Dr. Ho has a right to review these materials because they also can demonstrate his innocence and/or be helpful in sentencing if Dr. Ho is found guilty.

Dr. Ho first asked the government to produce this information on July 20, 2016. *See* Ex. A. The government ignored this request, and Dr. Ho asked for it again by letter dated October

2

28, 2016, and by email on November 1, 2016. *See* Exs. B–C. The government responded on November 8, 2016, after consulting with the National Nuclear Security Administration ("NNSA"), and claimed that "all specific authorizations issued under 10 C.F.R. Part 810 are available to the public and can be found at the DOE FOIA Public Reading Room." Ex. D. As the government should know, however, the DOE does not place all specific authorizations in that reading room.[1] And, to date, the government has not provided the requested material that is not in the reading room. Thus, Dr. Ho asks the Court to compel the government to provide all of the Part 810 specific authorizations to China, and the above-referenced documents related to those specific authorizations.

The final three categories of documents (the "Commercial Nuclear Reactor Documents") are relevant because the government has repeatedly raised the specter that Dr. Ho's conduct could result in the construction of atomic weapons.[2] The government cannot, on the one hand, argue the merits of this prosecution based upon concerns that plutonium generated by the commercial reactors at issue could be used to fashion nuclear bombs and, at the same time, argue

---

[1] On November 22, 2016, the government provided what it represented were the Specific Authorizations that were not publicly available in the Reading Room. However, the government still has not provided – despite repeated requests – (1) applications pertaining to each authorization; (2) licensing-related correspondence with DOE; and (3) internal memoranda that DOE (or other government) staff prepared for the Secretary of Energy's review justifying a grant of the specific authorization; and (4) the non-proliferation and other assurances that the Chinese government provided – typically through diplomatic notes – to the U.S. government. Without these additional materials, the Specific Authorizations, in and of themselves, are of little use. They provide only the barest of information.

[2] The government claims that "the only known way to produce significant amounts of plutonium is inside a nuclear reactor. ***That is how the United States produced the plutonium used in the Manhattan Project and all its subsequent nuclear weapons***." ECF No. 50 at 1 (emphasis added). It then explains that "[a] typical nuclear reactor produces up to 28 kilograms of plutonium per terawatt hour of electricity generated. . . . ***It would take approximately one to three months to convert plutonium produced from a uranium-powered nuclear reactor to use in a nuclear explosive device***." *Id.* at 4–5 (emphasis added).

that information demonstrating that plutonium from those same reactors has never been used for such nefarious purposes is somehow not relevant or discoverable.

Given the government's arguments, any information demonstrating that commercial light-water nuclear power plants in China, which are the reactors at issue in the Indictment, have ***not*** produced special nuclear material used in nuclear explosive devices is critical. Such information will establish that Dr. Ho consulted for commercial nuclear power plants that ***utilize*** special nuclear materials (i.e., uranium) as fuel rather than at facilities that ***develop or produce*** special nuclear material (i.e., plutonium) that can be turned into atomic bombs in "approximately one to three months." ECF No. 50 at 4–5. These documents will also thwart any government attempt to inaccurately portray at trial that Dr. Ho was providing assistance to China's atomic weapons program.

The defense initially requested production of all *Brady* and Rule 16 material on July 20, 2016. *See* Ex. A. Dr. Ho then specifically requested the Commercial Nuclear Reactor Documents referenced in this motion on October 3, 2016 and again in a phone call on November 10, 2016. *See* Exs. E–F. To date, the prosecutors have not provided this material, and they have refused to request it from government agencies.

Dr. Ho notes that the five categories of documents requested in this motion could be maintained by other agencies or departments, and may include Classified Information (*e.g.*, Restricted Data or National Security Information). If any of this material includes Classified Information, Dr. Ho respectfully asks the Court to order the government to start the necessary procedures to clear defense counsel and initiate procedures pursuant to the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3.[3] This urgency is necessary because the

---

[3] Dr. Ho's counsel identified such a need weeks ago. *See* Ex. E at 3.

process is lengthy and Dr. Ho—an innocent man who is currently detained pending trial—has not, and is not, requesting a continuance for his trial, which is set to commence on January 24, 2017. Accordingly, and for the reasons set forth herein, Dr. Ho's motion to compel the referenced *Brady* and Rule 16 material should be granted in its entirety.

## II. ARGUMENT

### A. The prosecutors' discovery obligations extend beyond documents maintained by the Department of Justice.

In this case, the prosecutors' obligations to collect and produce *Brady* and Rule 16 material extend beyond documents that are currently held by the Department of Justice. Here, for purposes of *Brady* and Rule 16, "'the government' includes any and all agencies and departments of the Executive Branch of the government and their subdivisions, not just the Justice Department, the FBI, . . . and other law enforcement agencies." *United States v. Safavian*, 233 F.R.D. 12, 14 (D.D.C. 2005); *United States v. Perdomo*, 929 F.2d 967, 970–71 (3d Cir. 1991) (*Brady* requires prosecution to produce evidence favorable to the defendant that is "readily available" to the prosecution; evidence is "readily available" if it is "in the possession of some arm of the state"); *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973) ("[T]here is no suggestion in *Brady* that different 'arms' of the government, particularly when so closely connected as this one for the purpose of the case, are severable entities."), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984).

*Safavian* clarifies that "[u]nder *Brady*, the prosecutors have an affirmative duty . . . to cause files to be searched that are not only maintained by the prosecutor's or investigative agency's office, but also by other branches of the government 'closely aligned with the prosecution.'" 233 F.R.D. at 17 (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). In this case, there is little doubt that the DOE and NNSA are closely aligned with

5

the prosecution. The NNSA is responsible for the administration of 10 C.F.R. Part 810 and has prepared three pre-trial certifications alleging that certain technology at issue in the Indictment is controlled under Part 810. *See* Exs. G–I. Moreover, witnesses from the NNSA will likely testify at trial. Thus, the NNSA is closely aligned with the prosecutors, and the prosecutors' discovery obligations should extend to documents maintained by the NNSA.

Given the complexity of the charges in the Indictment, the breadth of this two-and-a-half-year investigation, and the national security issues that the government has raised, the NNSA is not the only other executive agency closely aligned with the prosecution in this case. In particular, Dr. Ho expects that executive agencies and departments in the intelligence community[4] have worked with the prosecution to investigate this case—including, but not limited to, the Central Intelligence Agency ("CIA"), National Security Agency ("NSA"), and Defense Intelligence Agency ("DIA"). Accordingly, Dr. Ho asserts that the prosecutors must search documents maintained by these other executive agencies—which, as described below, are closely aligned with the prosecutors for purposes of this Indictment.

The Criminal Resource Manual of the U.S. Attorneys' Manual is instructive. While the Manual states that, as a general rule, a prosecutor is not expected to seek information from the intelligence community, it contemplates that the unique facts of certain types of cases bring these files within the scope of the investigation. Specifically, the Manual states:

> [C]ertain types of cases that may fall outside of that [general] rule in which issues relating to national security and/or classified information are likely to be present, e.g., . . . those involving alleged ***violations of the Arms Export Control Act*** or the International Emergency Economic Powers Act; those involving trading with the

---

[4] "The intelligence community (IC) includes the Central Intelligence Agency, the National Security Agency, the Defense Intelligence Agency, and the National Reconnaissance Office. It also includes the intelligence components of the Department of State, Federal Bureau of Investigation, Department of Treasury, Department of Energy, and the respective military services." U.S. Attorneys' Manual § 9-90.210.

6

enemy . . . *especially that if they involve foreign government* or military personnel . . . .

U.S. Attorneys' Manual, CRM § 2052 (emphases added). For cases that fall outside the general rule, the Manual advises that a "prosecutor should consider initiating a search of IC [Intelligence Community] files." *Id.* The Arms Export Control Act governs conduct substantially similar to the conduct alleged in the Indictment. And here, the prosecutors put national security—plutonium for nuclear weapons—at issue in this case. The Indictment states that Dr. Ho conspired to "engage and participate . . . in the development and production of special nuclear material . . . with the intent to secure an advantage to the People's Republic of China." ECF No. 3 ¶ 17. Accordingly, the Manual provides that the intelligence community is aligned with the prosecutors in this case.

The prosecutors' discovery obligations in this case extend to documents maintained by DOE, NNSA, and other members of the intelligence community—including, but not limited to, the CIA, NSA, and DIA—because these executive agencies or departments are aligned with the prosecution team.

> **B.** **The requested materials must be produced under *Brady* and Rule 16.**
> 
> **1.** ***Brady* Information**

The government must disclose evidence favorable to the accused if the evidence is material to guilt or sentencing. *See United States v. Hayes*, 376 F. Supp. 2d 736, 738 (E.D. Mich. 2005) (granting motion for disclosure of *Brady* material pretrial because it was obvious that the requested evidence was "material and discoverable"). *Brady* evidence is material "if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 738–39 (quoting *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)). A reasonable probability "is 'a probability sufficient to undermine

7

confidence in the outcome.'" *Id.* at 739 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure." *Safavian*, 233 F.R.D. at 17 (citing *United States v. Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988)).

The five categories of discovery Dr. Ho seeks here contain information "favorable to the accused" that is material to both guilt and sentencing and, thus, must be produced.

### a. The Specific Authorization Documents

The Specific Authorization Documents contain discoverable material because any evidence suggesting that the Secretary of Energy issued a specific authorization for China for a technology covered by the Indictment would establish that Dr. Ho did not also need a second specific authorization to share that same technology with China. Indeed, 42 U.S.C. § 2077(b)(2) requires that the Secretary find that a proposed export of technology is not inimical to the interests of the United States *before* he grants a specific authorization. The Secretary's findings are not person or entity specific; they are technology specific.

Once the non-inimicality finding has been made, then, essentially, the cat is out of the bag in terms of that particular technology to the designated country. Anyone who subsequently provides that same technology to that same country cannot violate 42 U.S.C. § 2077 because the Secretary has already determined that providing that particular technology is not inimical to the interests of the United States. This serves as a complete defense to the Indictment because 42 U.S.C. § 2077 provides:

> It shall be unlawful for any person to directly or indirectly engage or participate in the development or production of any special nuclear material outside the United States *except . . . upon authorization by the Secretary of Energy after a determination that such activity will not be inimical to the interest of the United States*.

8

Therefore, Dr. Ho needs to review all of the technology transfer approvals to China to determine if the technology covers the same technology that is alleged in the Indictment.

Dr. Ho also has a separate ground for requesting these Specific Authorization Documents. As stated above, the government has alleged that 42 U.S.C. § 2077 controls the export of commercial light-water nuclear power plant technology because such plants can be used for producing plutonium for nuclear weapons. *See*, *e.g.*, ECF No. 50 at 1–2. Dr. Ho needs to review the Secretary's specific authorizations and the documents related to these specific authorizations described above so he can demonstrate that the government's allegations are baseless.

For the aforementioned reasons, Dr. Ho is absolutely entitled to the Specific Authorization Documents related to any entity in China that were in effect at any time between 1997 and the present—the period covered by the Indictment. The prosecutors have told Dr. Ho to look for specific authorizations in the DOE's public "reading room." Some of the specific authorizations, however, are missing from the DOE reading room because applicants can request that the authorizations be treated as proprietary. Moreover, none of the following documents are available in the DOE reading room: (1) specific authorization applications, which are incorporated-by-reference in the specific authorizations; (2) internal memoranda that DOE (or other government) staff prepare for the Secretary's review that justifies the "non-inimicality finding"; and (3) non-proliferation assurances that the Chinese government provides to the U.S. government.

### b. The Commercial Nuclear Reactor Documents

The Commercial Nuclear Reactor Documents are material and favorable to Dr. Ho because this information would bolster Dr. Ho's argument that he did not "willfully and knowingly engage and participate . . . in the development and production of special nuclear

9

material," as alleged in the Indictment. ECF No. 3 ¶ 17. In particular, if the government is in possession of any of the material in the Commercial Nuclear Reactor Documents, then it would substantiate Dr. Ho's argument that commercial light-water nuclear power plants—the ones at issue in the Indictment—*utilize* special nuclear material and *are not production facilities* engaged in the development or production of special nuclear material, as those terms are defined in the Atomic Energy Act and Nuclear Regulatory Commission regulations. *See, e.g.*, ECF No. 36 at 7.

The Commercial Nuclear Reactor Documents could contain information that is outcome-determinative because the jurors' impressions of the gravity of the charges against Dr. Ho will inform, among other things, whether they believe that Dr. Ho acted without the necessary intent. These materials would undercut the government's assertion that "a nuclear engineer such as defendant with years of experience working in the heavily-regulated nuclear power industry would know . . . that unauthorized assistance to foreign-based nuclear power facilities is unlawful" and would support Dr. Ho's argument that he did not "knowingly and willfully" violate the Atomic Energy Act. ECF No. 50 at 12. In the event that the jury finds Dr. Ho guilty, evidence related to the gravity of the offense could affect Dr. Ho's sentence because of the nature of the charges.

*Safavian* is instructive. In that case, the Chief of Staff for the Administrator of the General Services Administration ("GSA") was charged with making false statements and obstructing justice in connection with an investigation related to statements made by the defendant in connection with a golf trip he attended in Scotland with a lobbyist. 233 F.R.D. at 14. The indictment alleged, in part, that the defendant lied when he stated in a request for an Ethics opinion related to the trip that the lobbyist "has no business before GSA." *Id.* The

10

defendant contended that this assertion was truthful because the two projects that the lobbyist allegedly had with the GSA were not available for any business during the time period that defendant requested this ethics opinion. *See id.* at 18.

To support this argument, the defendant requested that the government obtain from the GSA all emails and correspondence related to the projects that the lobbyist had with the GSA. *See id.* In response, the government argued that it did not have to provide the defendant with all of these materials because the defendant had not seen these before, and, therefore, the materials could not have reflected his state of mind. *See id.* But the court disagreed: "To the contrary, e-mails between certain named associates of [the lobbyist] with knowledge of the status of these projects or the Scotland trip may very well include information helpful to the defendant in finding witnesses or documents that could support his contention." *Id.*

Here, as in *Safavian*, the defendant in seeking documents that are not currently maintained by the Department of Justice and that the defendant has never seen before. Additionally, Dr. Ho is seeking factual information that would undercut several of the prosecutors' factual assertions and buttress Dr. Ho's defenses, like the information in *Safavian*. And here, as in *Safavian*, the prosecutors do not contend that they are unable to request access to the documents. Instead, they have refused to ask for this exculpatory information. Under these circumstances, where the requested documents are maintained by executive agencies or departments closely aligned with the prosecution and contain material information favorable to Dr. Ho, *Brady* requires the Department of Justice to request these documents and produce them upon receipt.

Accordingly, Dr. Ho respectfully asks the Court to compel the government to initiate a search for the materials requested in this motion without delay and to provide them to Dr. Ho.

11

### 2. Rule 16 documents material to the preparation of the defense must be produced.

The five categories of documents Dr. Ho requests must also be produced under Rule 16. This Rule directs the prosecutors to produce documents "within the government's possession, custody, or control" that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). A document is "material" if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Marshall*, 132 F. 3d 63, 68 (D.C. Cir. 1998).[5]

The five categories of discovery Dr. Ho seeks through this motion are in the government's "possession, custody, or control" and are material to Dr. Ho's defense. All of the documents maintained by an executive agency closely aligned with the prosecution are within the government's "possession, custody or control." Fed. R. Crim. Proc. 16(a)(1)(E)(i); *see also Safavian*, 233 F.R.D. at 14. Also, this information is material because each category of discovery could uncover admissible evidence that Dr. Ho could use to support his legal and factual defenses to the novel charges in this case.

## III. CONCLUSION

For the foregoing reasons, Dr. Ho respectfully requests that the Court compel the government to produce the five categories of information requested immediately as they contain material, exculpatory information favorable to Dr. Ho's defense.

---

[5] While Dr. Ho believes that all of these requests must be produced pursuant to *Brady* because they are favorable to the defense, at a minimum, these documents are material to the defense.

Respectfully submitted,

  /s/ Peter Zeidenberg
Peter Zeidenberg (*pro hac vice*)
Taniel Anderson (*pro hac vice*)
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6000
Fax: (202) 857-6395
Email: Peter.Zeidenberg@arentfox.com
       Taniel.Anderson@arentfox.com


Wade V. Davies [BPR # 016052]
Ritchie, Dillard, Davies & Johnson, P.C.
606 West Main Street
Suite 300
Knoxville, TN 37902
Tel: 865-637-0661
Fax: 865-524-4623
Email: wdavies@rddjlaw.com

*Attorneys for Defendant Allen Ho*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2016, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the attorneys of record in this matter.

   /s/ Peter Zeidenberg
Peter Zeidenberg