IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

_____
                                  )
UNITED STATES OF AMERICA,         )
                                  )
          Plaintiff,              )
                                  )
vs.                               )   Case No.:   3:16-CR-46
                                  )
SZUHSIUNG HO,                     )
also known as ALLEN HO,           )
                                  )
          Defendant.              )
_____ )


**VOLUME II (pp. 58-87)**


**CONTINUED SENTENCING PROCEEDINGS**
**BEFORE THE HONORABLE THOMAS A. VARLAN**

**August 31, 2017**
**9:37 a.m. to 10:17 a.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**          CHARLES E. ATCHLEY, JR., ESQUIRE
                                RAY BARTO SLABBEKORN, JR., ESQUIRE
                                Assistant United States Attorney
                                United States Department of Justice
                                Office of the United States Attorney
                                800 Market Street
                                Suite 211
                                Knoxville, Tennessee 37902


**FOR THE DEFENDANT:**          PETER ZEIDENBERG, ESQUIRE
                                Arent Fox, LLP
                                1717 K Street NW
                                Washington, DC 20006

                                WADE V. DAVIES, ESQUIRE
                                Ritchie, Dillard, Davies & Johnson
                                606 West Main Street
                                Suite 300
                                Knoxville, Tennessee 37902

Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823

**REPORTED BY:**

Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823

1        (Call to Order of the Court)

2             THE COURT:  Thank you, everyone, for being here again

3    this morning.  Just a moment to get organized.

4             All right.  Again, the Court appreciates everybody's

5    input yesterday, particularly the statements and arguments

6    offered by Counsel, both during yesterday's proceeding as well

7    as in the multiple prehearing filings made by the respective

8    parties.  The Court also again appreciates the allocution of the

9    defendant, and the Court has considered the entire record in

10   this case, including the letters of support submitted, the

11   presentence report, and again all the arguments presented by the

12   government and the defendant.

13            In a manner intended to comply with the Sixth Circuit's

14   jurisprudence since the Booker case rendered the Sentencing

15   Guidelines advisory and Gall v. United States' requirement that

16   the Court make an individual assessment based on the facts

17   presented and adequately explain the chosen sentence, the Court

18   will explain its reasons for the sentence to be imposed in this

19   case.

20            The Court will discuss the Guideline calculation and

21   the factors discussed in 18 United States Code Section 3553

22   relevant to this case.  Based on those factors and consideration

23   of the advisory guideline range, as well as the parties'

24   respective motions, the Court will then impose a sentence

25   sufficient, but not greater than necessary, to comply with the

1    purposes discussed in 18 United States Code Section 3553.

2          First, with respect to that Guideline calculation, that

3    is contained at Paragraph 54 of the presentence report, based on

4    a total offense level of 25 and criminal history category of I,

5    the Guideline imprisonment range is 57 months to 71 months.

6    Again, of course, that's tempered by the parties' motions, which

7    the court will address momentarily.

8          Looking next, though, at the Section 3553 factors, the

9    nature and circumstances of the offense, the defendant has pled

10   guilty to the lesser included offense of involving a conspiracy

11   to unlawfully engage and participate in the production and

12   development of special nuclear material outside the United

13   States without the intent to injure the United States or to

14   secure an advantage to a foreign nation.

15         His offense conduct, which has, again, been discussed

16   in detail in the writings and more limited extent yesterday, is

17   also set forth in the offense conduct provisions of the

18   presentence report, all of which the Court has reviewed.

19         In brief summation, during the period alleged in the

20   indictment, the defendant was a nuclear engineer who acted as a

21   consultant to the China General Nuclear Power Company, which is

22   based in the People's Republic of China.  The defendant was also

23   the owner and president of Energy Technology International, and

24   CGNPC was a state-owned enterprise that specialized in the

25   development and manufacture of nuclear reactors.

                    UNITED STATES DISTRICT COURT

1        As set forth in Paragraph 12, the defendant willfully

2   sought to profit by his own actions and those of ETI by

3   assisting CGNPC in procuring U.S.-based nuclear engineers from

4   the Eastern District of Tennessee and elsewhere to assist CGNPC

5   and its subsidiaries in designing and manufacturing certain

6   components for nuclear reactors more quickly by reducing the

7   time and financial cost of research and development of nuclear

8   technology.

9        And the defendant was aware that this type of

10  assistance required the special authorization of the Secretary

11  of Energy before it could be exported to the People's Republic

12  of China, and he had sought approval from the Department of

13  Energy in the past, and at no time did the defendant obtain

14  specific authorization from the Secretary of Energy for the

15  conduct described in the indictment.

16       Paragraph 13 lists in more detail the assistance that

17  he engaged in terms of paying the various individual or

18  individuals to travel to the People's Republic of China at

19  CGNPC's request to provide nuclear consulting.  And it's noted

20  during the trip this individual, at Defendant's direction,

21  provided various Electric Power Research Institute reports to

22  CGNPC, again, as listed specifically in the presentence report.

23       Turning to the history and characteristics of the

24  defendant, the defendant is, I believe, currently 67 years of

25  age.  He was born in Taiwan.  He has no previous criminal

UNITED STATES DISTRICT COURT

 1  history.  He has two siblings and a mother in Taiwan with whom

 2  he maintains good relationships.  The defendant was married in

 3  1974.  He has no children from that union, but he does have a

 4  nine-year-old son in China who resides with his biological

 5  mother, but with whom the defendant has frequent contact and

 6  visits during his trips to China.

 7       The defendant became a naturalized citizen of the

 8  United States in 1983 and obtained dual citizenship as a

 9  Taiwanese citizen in 2011.  Physically, it's noted or reported

10  that the defendant has a stent in his heart and suffers from

11  some degree of coronary heart disease.  He has no history of

12  mental health treatment or use of alcohol or illegal drugs.

13       The defendant is quite educated with a master's degree

14  in mechanical engineering and a PhD in nuclear engineering.  He

15  was self-employed with ETI, his consulting company from 1996 to

16  2016.  Prior to that time, he worked for various companies,

17  including Westinghouse, as a senior engineer, working with

18  commercial nuclear power plants and Public Service Electric and

19  Gas, which operated commercial nuclear power plants in New

20  Jersey.

21       With this background in mind, the Court considers the

22  need for the sentence imposed to reflect various factors,

23  including the seriousness of the offense, and, certainly, that

24  particular factor was the subject of much discussion and

25  argument by the parties.

UNITED STATES DISTRICT COURT

1          The Court does conclude or agree that Defendant's

2     conduct is serious conduct from the -- from the plea agreement.

3     It's noted again that the defendant willfully sought to profit

4     by assisting CGNPC in procuring U.S.-based nuclear engineers to

5     assist CGNPC and its subsidiaries in designing and manufacturing

6     certain components for nuclear reactors more quickly by reducing

7     the time and financial cost of research and development of

8     nuclear technology, as alleged in the indictment.

9          In more simple terms, the defendant continued with his

10    CGNPC work without obtaining the needed regulatory approval from

11    DOE.  He acknowledges this was wrong of him to do and states he

12    accepts full responsibility for his conduct.

13         The Court certainly recognizes, again, the submissions

14    by the parties as to the level of the seriousness of Defendant's

15    offense conduct.  Among other things, the defendant states or

16    argues that the reports at issue concern safety practices at

17    nuclear facilities and that the U.S. government has subsequently

18    released one of the reports.  In other words, per the defendant,

19    his conduct did not have relation to nuclear weapons programs,

20    but only concerned civilian-run commercial nuclear power plants.

21         The defendant also submits this case involves conduct

22    that DOE routinely approved and that the U.S. government has

23    repeatedly certified China, the People's Republic of China as a

24    responsible nuclear power.

25         And, again, from Defendant's sentencing memorandum,

UNITED STATES DISTRICT COURT

1    quoting from that sentencing memorandum, quote, in that context,

2    Defendant's conduct, while clearly wrong, was not particularly

3    serious.  The conduct posed no danger to anyone's safety and

4    ETI's work was largely safety related.

5           On the other hand, the government in assessing the

6    seriousness of Defendant's conduct submits and argues that this

7    is not just a licensure offense, but does involve the security

8    and safety of the United States.

9           Looking at the indictment, the defendant pled guilty to

10   conspiring to directly or indirectly engage or participate in

11   the unauthorized development or production of special nuclear

12   materials outside the United States, albeit without the intent

13   to injure the United States or to secure an advantage for a

14   foreign nation.

15          In that regard, the Court does note the distinction

16   between the original indictment, Paragraph 17, which provided

17   the defendant's actions were with the intent to secure an

18   advantage to the People's Republic of China versus the plea

19   agreement, which provides those actions were without the intent

20   to secure an advantage for a foreign nation.

21          That is a distinction, which does in part, at least,

22   impact a discussion of the level of seriousness of Defendant's

23   offense conduct.  But even then, as the government argued

24   yesterday, secretiveness equals seriousness.

25          And among other things, the government points to, and

                     UNITED STATES DISTRICT COURT

1  the Court does take into consideration the aspects of

2  defendant's downloading of the restrictive reports, the

3  funneling of foreign payments to American engineers, and other

4  activity on Defendant's part, and all of this against the

5  backdrop of a nuclear energy program that does, as the

6  government noted yesterday, produce a by-product that can be

7  used in the production of nuclear weapons.  And that is why, as

8  the government correctly notes, the technology used by American

9  nuclear power plant -- nuclear power plants is significantly

10  regulated, all of which the Court takes into consideration in

11  considering the need for the sentence imposed to reflect the

12  seriousness of defendant's offense conduct.

13         Correspondingly and for many of the same reasons, the

14  Court finds the need for the sentence imposed to promote respect

15  for the law and provide just punishment.

16         Again, while defendant may dispute the level of

17  seriousness, he does not dispute the wrongfulness of his

18  actions, and the Court therefore considers the level and scope

19  of his offense conduct, but also his lack of previous criminal

20  history and his acceptance of responsibility in considering the

21  need to promote respect for the law and provide just punishment.

22         Next, the Court considers the need to afford adequate

23  deterrence, both specific and general.  Given defendant's age,

24  his retirement, his acceptance of responsibility, and the impact

25  of his guilty plea, the Court finds a lesser need to afford

UNITED STATES DISTRICT COURT

1  specific deterrence, but the Court must also consider the need

2  for general deterrence, that is to fashion a sentence that would

3  act as a general deterrent to others similarly situated who may

4  contemplate the undertaking of similar crimes in the future.

5  Given the nature, scope, and seriousness of Defendant's crime,

6  general deterrence is an appropriate consideration by the Court

7  in this case.

8          With respect to the need to protect the public from

9  further crimes, again, given the defendant's history and

10  characteristics as discussed and his acceptance of

11  responsibility and lack of previous criminal history, the Court

12  finds a lesser need to impose a sentence that would protect the

13  public from further crimes of the defendant.

14          With respect to the need to provide the defendant with

15  training, education, and medical treatment, I think it's obvious

16  the defendant is not in need of training or education.

17          To the extent he's in need of medical treatment to the

18  extent any term of imprisonment is called for in this case, the

19  Court has not been presented with any information that his

20  medical needs could not be addressed by the Bureau of Prisons.

21          With respect to the need to avoid sentence disparities,

22  the Court does note that the advisory Guidelines are intended in

23  part to carry out the national policy, as articulated by

24  Congress, that sentences be uniform across the country to the

25  extent possible and be based on the offender's actual conduct

UNITED STATES DISTRICT COURT

1    and history.  There are two -- in this case, there are two

2    limitations on this particular precept.

3         One, as emphasized in defendant's sentencing

4    memorandum, Dr. Ho is the first defendant in history to be

5    sentenced for a violation of 42 United States Code Sections

6    2077(b) and 2272.  And, second, the parties' respective motions

7    for downward departure and the Court's consideration thereof

8    have an impact on the calculated advisory Guideline range of an

9    offense level of 25 and a criminal history category of I and a

10   starting point advisory Guideline range of 57 to 71 months.

11        One other consideration is, under 3553 is the need to

12   provide restitution.  And let the Court go ahead and address the

13   matter of restitution at this point, which was addressed

14   yesterday as an objection to the presentence report by the

15   defendant.

16        With regard to restitution, the Court first notes that

17   the government has not requested that restitution be ordered

18   pursuant to the plea agreement.  And in the absence of any

19   argument in favor of awarding restitution under the plea

20   agreement, the Court will decline to do so.

21        The government instead argues the Court should consider

22   its discretion -- should exercise its discretion to order

23   restitution as a special condition of supervised release under

24   18 United States Code Sections 3583(d) and 3563(b)(2).  The

25   government requests the Court order $166,250 in restitution to

UNITED STATES DISTRICT COURT

1    the Electric Power Research Institute or EPRI and arrives at

2    this figure by combining the advertised price of two of the

3    three reports the defendant illegally disclosed to an

4    unauthorized recipient.  The Court notes the third report at

5    issue in this case has since been released to the public, so

6    this is why its value is not included as part of the requested

7    restitution.

8         In the order of restitution is a condition of

9    supervised release under Section 3583(d) and 3563(b)(2) is

10   discretionary.  This means the Court is not required to order

11   restitution under these sections, but the Court may do so under

12   appropriate circumstances.

13        In this case, after full consideration of the parties'

14   legal and factual arguments, the Court will decline to impose a

15   discretionary order of restitution.  Discretionary restitution

16   is a tool the Court may use to appropriately compensate victims

17   of a crime for their losses.  While the Court agrees with the

18   government that conspiracy cases, such as this one, allow for a

19   broader definition of victim than in other cases, the Court is

20   not sufficiently convinced that EPRI was directly harmed by

21   defendant's criminal conduct in the course of the conspiracy.

22        Defendant aided in the unauthorized production of

23   special nuclear material outside the United States and he used

24   EPRI's reports to do so, but the evidence presented has not

25   convinced the Court that EPRI suffered legal harm, financial or

UNITED STATES DISTRICT COURT

1    otherwise, as a result of this conduct.  It's not clear to the

2    Court that EPRI would have been able to sell these reports to

3    the China General Nuclear Power Company, the entity to which

4    defendant illegally disclosed the reports; therefore, it's not

5    clear to the Court that EPRI lost income as a result of

6    defendant's disclosure of the report.

7         To the extent it's argued that EPRI may have been able

8    to sell these reports to CGNPC in the future, the Court

9    similarly declines to award restitution for hypothetical future

10   lost income under these circumstances.  The evidence presented

11   at sentencing has not sufficiently convinced the Court that EPRI

12   has ever been able to sell the reports in question to CGNPC or

13   that EPRI would ever be able to sell reports in question to

14   CGNPC.

15        Furthermore, based on the arguments and submissions at

16   sentencing, the Court is not in a position to determine the

17   extent of any losses EPRI may have suffered or could suffer in

18   the future as a result of defendant's conduct.  There was

19   conflicting argument regarding whether CGNPC was a member of

20   EPRI.  Additionally, it's not clear to the Court whether

21   membership in EPRI entitled CGNPC to the reports in question,

22   and whether any such entitlement to the reports would be

23   included in the cost of membership or if CGNPC would still have

24   needed to pay for the reports.

25        Finally, the Court heard no evidence regarding the cost

UNITED STATES DISTRICT COURT

1    of the reports at a time when EPRI could have sold them to

2    CGNPC, whether that be in the past, present, or future.  The

3    Court also again notes that one of the reports at issue is now

4    available to the public for free, and this signals in part to

5    the Court that the value of these types of reports fluctuates

6    over time, which reinforces the Court's conclusion that it is

7    unable to determine whether EPRI suffered a loss, let alone the

8    amount of any such loss.

9         In the absence of evidence sufficient to convince the

10   Court that EPRI suffered financial harm as a result of

11   Defendant's conduct or more particularly the specific amount of

12   any such harm, the Court finds it's appropriate to decline to

13   exercise its discretion to impose restitution as a condition of

14   supervised release.  So to that extent, the Court will grant

15   defendant's objection to the presentence report related to the

16   restitution amount set forth in the presentence report.

17        Turning now to the parties' respective motions, the

18   Court will first address the government's sealed motion for

19   downward departure pursuant to Section 5K1.1 of the Guidelines.

20   Section 5K1.1 instructs the Court to consider several factors in

21   determining an appropriate reduction.  These factors include,

22   but are not limited to the Court's evaluation of the

23   significance and usefulness of the defendant's assistance,

24   taking into -- taking into consideration the government's

25   evaluation of the assistance rendered.

UNITED STATES DISTRICT COURT

1    Having considered this factor, as well as all the

2    factors of Section 5K1.1, as well as all the other evidence

3    before the Court, the government finds the defendant was -- the

4    defendant's assistance was timely, significant, and useful to

5    the government, and that the information he provided was also

6    truthful, complete, and reliable.  Among other things, the

7    government, again, as noted in yesterday's discussion, points to

8    defendant's multiple debriefings, describes his assistance to

9    the United States as extremely valuable and further describes it

10   as -- I believe I'm quoting directly from yesterday's argument

11   by the government -- as crucial to our country's national

12   security.

13   Accordingly, given this description of the defendant's

14   substantial assistance, the government's sealed motion for

15   downward departure is granted.  And the Court will take the

16   defendant's cooperation and substantial assistance into

17   consideration in fashioning a sentence sufficient, but not

18   greater than necessary, to comply with the purposes of 18 U.S.C.

19   Section 3553.

20   In that regard, the government has recommended a

21   five-level departure from the current offense level of 25, which

22   correlates to a Guidelines range of 57 to 71 months

23   imprisonment.  The Court finds that a five-level departure is an

24   appropriate reduction, considering the factors set forth in

25   Section 5K1.1 as related to Defendant's substantial assistance.

UNITED STATES DISTRICT COURT

1    This departure results in a new offense level of 20, with a

2    criminal history category of I and a resulting Guidelines range

3    of 33 to 41 months imprisonment.

4         Next, addressing the defendant's motion for an

5    additional downward departure and/or variance.  At the outset,

6    the Court finds it appropriate to distinguish a departure from a

7    variance as the defendant's motion makes a request for both.  A

8    departure refers to the imposition of a sentence outside the

9    Guidelines range due to the application of a particular

10   Guidelines provision, whereas a variance refers to the selection

11   of a sentence outside the Guidelines range, based upon the

12   Court's weighing of one or more of the sentencing factors of

13   Section 3553(a).  The Court recognizes its discretion to depart

14   or vary as it deems appropriate.  The Court also notes that

15   certain Guidelines provisions can aid the Court in determining

16   whether to vary from the Guidelines range.

17        Looking first at Defendant's variance request, the

18   defendant points to several Section 3553 factors in support.

19   Most notably he points to the following factors:  That he has no

20   criminal history, so he argues there's little need to protect

21   the public from any future crimes; that the defendant's career

22   in nuclear consulting is over, so he will not be tempted to

23   commit this type of crime again; that a below Guidelines

24   sentence will adequately reflect the seriousness of the offense,

25   as defendant is accused of conduct that DOE routinely approves

UNITED STATES DISTRICT COURT

1   and has approved in the past, and that his crime was acting

2   without such prior approval; that he is 67 years old and suffers

3   from a serious heart condition, and that the combination of

4   these factors make incarceration especially difficult for the

5   defendant; that the defendant has already suffered severe

6   punishment, as he has been particularly vulnerable due to his

7   ethnicity, age, and misunderstanding of the severity of the

8   offense, and that the defendant has spent the majority of his

9   presentence incarceration in solitary confinement.

10          In the government's written response, it addressed

11  primarily the defendant's argument regarding the conditions of

12  his presentence confinement, arguing the defendant was confined

13  in a lawful and humane way and that he suffered no injuries

14  while incarcerated.  The defendant, on the other hand, submits

15  that while lawful, Defendant's incarceration caused significant

16  physical hardship and psychological impact.

17          The Court recognizes that presentence confinement

18  conditions may in appropriate cases be a permissible basis for a

19  departure or variance, but under the circumstances and review of

20  this case does not believe that Defendant's presentence

21  confinement warrants a variance.

22          Similarly, while the Court has discussed and does

23  consider all the other factors cited by the defendant for a

24  variance, including his age, physical condition, and for the

25  need for the sentence imposed to reflect various factors,

UNITED STATES DISTRICT COURT

1    including but not limited to the seriousness of his offense

2    conduct, the Court does not believe that they give rise

3    individually or collectively to a variance.

4           However, as the Court notes, it has and will consider

5    all the factors discussed by the defendant in considering a

6    sentence sufficient, but not greater than necessary, to reflect

7    all the factors of 18 U.S.C. Section 3553.

8           That then brings us to next, to Defendant's motion for

9    downward departure.  In that regard, the defendant argues for a

10   downward departure because his conduct falls outside the

11   heartland of the conduct contemplated by Sentencing Guideline,

12   Section 2M6.1, the section under which he faces sentencing.

13          When the Court is presented with an atypical case, one

14   to which a particular Guideline linguistically applies, but

15   where the conduct in question significantly differs from the

16   norm, a departure below the Guidelines may be warranted.

17          In this case, after consideration of the parties'

18   written and oral arguments and the Court's own review of the

19   applicable Guidelines provision and the relevant law, the Court

20   finds this to be such a case, that is, that this is in fact an

21   atypical case.  In other words, while Section 2M6.1

22   linguistically covers Dr. Ho's conduct, the Court does find that

23   his conduct falls outside the heartland of Section 2M6.1 cases.

24          Let me explain further.  Title Section 2M6.1 covers

25   offenses involving various dangerous weapons, such as nuclear

UNITED STATES DISTRICT COURT

1    and chemical weapons, biological agents or toxins or other

2    weapons of mass destruction.

3            Under Section 2M6.1(a)(2), Defendant's base offense

4    level is 28.  That same section in Subsection (a)(4) provides

5    for a base offense level of 20, a lower offense level than

6    Defendant's in cases involving a threat to use a nuclear weapon,

7    a chemical weapon, biological toxins, or any other weapon of

8    mass destruction.

9            While the Court agrees with the government, the

10   defendant has committed a serious offense, the Court finds the

11   defendant's conduct is not as serious as those offenses

12   specified in Section (a)(4), and, thus, the language of

13   Section 2M6.1 itself suggests this case falls outside the

14   heartland of the conduct contemplated by that section.

15           The Court has consulted the Sentencing Guidelines

16   beyond Section 2M6.1, as well, and finds them instructive in

17   this case.  As noted here and discussed yesterday, Section 2M6.2

18   provides for a base offense level of six.  In cases involving

19   violations of the regulations or license conditions of the

20   Nuclear -- Nuclear Regulatory Commission and Department of

21   Energy where such conduct was not committed with the intent to

22   injure the United States.

23           While the parties agree that Section 2M6.1(a)(2) covers

24   Defendant's conduct, the Court finds it instructive the

25   defendant's conduct is similar, at least in certain respects, to

UNITED STATES DISTRICT COURT

the conduct described in Section 2M6.2.  And the Court notes in

that regard, as argued by the defendant yesterday, that the base

offense level of six under Section 2M6.2 is 22 levels below

Defendant's base offense level of 28 under Section 2M6.1.

And, finally, the Court finds other cases where

defendants face sentencing under Section 2M6.1 to be

instructive.  Past cases reviewed by the Court involve conduct

such as dispersing a chemical weapon at a hospital, possessing

ricin for use as a weapon, attempting to acquire nerve gas,

mustard gas or a, quote, dirty bomb, closed quote, and plotting

to fire missiles at U.S. military assets in order to aid a

terrorist group.

While these offenses may not themselves make up the

heartland of cases under Section 2M6.1, these offenses do

contrast, again, in part to Defendant's conduct.  The Court

reiterates, for all the reasons previously discussed, the

defendant's offense is serious, but even serious offenses may

fall outside the heartland of cases contemplated by the

Guidelines, such that a downward departure is appropriate.  And

that is what the Court concludes here, for all the reasons

discussed, and the Court will therefore grant Defendant's motion

for downward departure.

Having done so and before that leads us to the sentence

in this case, the Court does note pursuant to the plea

agreement, the government agreed to dismiss Count 2 of the

UNITED STATES DISTRICT COURT

1    indictment in consideration of the defendant's guilty plea.  The

2    Court deferred acceptance of the plea agreement until having had

3    the opportunity to consider the presentence report in this case.

4    And after considering the presentence report, the plea agreement

5    will be accepted.  And pursuant to the agreement, Count 2 will

6    be dismissed as to this defendant, and the dismissal of this

7    count will be reflected in the judgment.

8            The Court finds the remaining charge adequately

9    reflects the seriousness of the actual offense behavior and that

10   accepting the agreement will not undermine the statutory

11   purposes of sentencing or the Sentencing Guidelines.

12           In light of everything discussed, including the

13   advisory Guideline range and the relevant Section 3553 factors,

14   the parties -- again, the parties' respective motions and the

15   Court's consideration of the facts discussed therein, and

16   considering all the arguments presented, the Court is going to

17   impose a below Guideline range in this case of 24 months.

18           For all the reasons discussed, the Court finds this

19   sentence to be sufficient, but not greater than necessary, to

20   comply with the purposes of 18 U.S.C. Section 3553.  The Court

21   also notes that at 24 months, that actually does equate to a

22   offense level of 17, which is below both the starting point in

23   this case as well as the level 20 as recommended by the

24   government.  In fact, in recognition of the Court's grant of the

25   defendant's motion for downward departure, the Court notes that,

UNITED STATES DISTRICT COURT

1  in effect, the Court has reduced the Guideline sentence by an

2  additional three levels.

3        And, again, the Court in doing so recognizes that this

4  case is outlined outside the heartland of cases as contemplated

5  by the applicable Guideline provision, but the Court also is

6  cognizant, particularly of the seriousness of the defendant's

7  offense conduct.

8        Again, as the Court noted earlier, even if the

9  defendant's actions ultimately in his plea agreement were found

10  to be without the intent to injure the United States or secure

11  an advantage of a foreign nation, the fact remains that the

12  defendant did undertake significant actions, again, including

13  but not limited to the unlawful downloading of restrictive

14  reports and the funneling of foreign payments to American

15  engineers, again, against the background of a nuclear energy

16  program that does provide a by-product that can be used in the

17  production of nuclear weapons.

18        The Court also notes that, obviously, the defendant

19  will receive credit for the time he's already been incarcerated.

20  And the Court is mindful -- or the Court notes in that regard,

21  that it is possible after some period of imprisonment, that the

22  defendant would be considered for a halfway house placement.

23  And given all the consideration of 3553 factors as well as the

24  defendant's history and characteristics, the Court is going to

25  further recommend to the BOP in lieu of any halfway house

1     placement as a period of imprisonment, as a portion of his

2     sentence, the defendant be evaluated for the BOP's direct home

3     confinement program.

4           The Court also has before it consideration of a fine in

5     this case.  The Court does find a fine appropriate -- to be

6     appropriate in this case, again, due to the seriousness of the

7     defendant's offense, the defendant's ability to pay a fine, and

8     the Court's decision not to impose restitution.

9           In determining the value of the fine, the Court looks

10    to the Sentencing Guidelines.  The Court does note, take into

11    consideration the argument yesterday, as noted in the plea

12    agreement, that the government agreed to recommend the sentence

13    at the low end of the Guideline range prior to any other

14    consideration by the Court.

15          And the Court does note that, at least from an original

16    Guideline standpoint, the low end of the Guideline range was

17    20,000.  And looking at the Guidelines range, after accounting

18    for the downward departure -- departure for substantial

19    assistance, the low end of the Guideline range would be 15,000.

20    But there is a significant range going upward in that regard.

21          And after consideration, the Court finds -- after

22    finding the Guidelines range to be appropriate in this case and

23    considering the parties' plea agreement, but also the Court's

24    discretion in that regard is going to impose a sentence in this

25    case at what was the -- well, excuse me, is going to impose a

UNITED STATES DISTRICT COURT

1  sentence -- a fine in this case within the Guidelines range of

2  $25,000.

3          The Court is also going to impose a one-year term of

4  supervised release, which, consistent with the parties' plea

5  agreement, is at the low end of the supervised release range.

6  The Court also notes the special conditions in Paragraphs 59 to

7  62 of the presentence report related to financial information,

8  credit restrictions, and payment of financial penalties.  Those

9  were initially suggested or imposed, recommended for imposition,

10 because of the recommendation of restitution, but because of the

11 imposition of a fine in this case, the Court believes those

12 special conditions to be equally applicable and more

13 particularly -- particularly to be reasonably related to the

14 several sentencing factors discussed by the Court to involve no

15 greater deprivation of liberty than reasonably necessary for

16 those several sentencing purposes and to be consistent with

17 pertinent policy statements issued by the Sentencing Commission.

18         Accordingly and pursuant to the Sentencing Reform Act

19 of 1984 -- let me back up.  I misread one notation on the fine.

20         The low end Guideline fine is 20,000, I may have said.

21 That's the amount of fine that I meant to impose, consistent

22 with the parties' plea agreement.  So a $20,000 fine, which is

23 the low end of the original Guideline range.

24         Accordingly and pursuant to the Sentencing Reform Act

25 of 1984, it is the judgment of the Court as to a lesser included

UNITED STATES DISTRICT COURT

offense of Count 1 in the indictment, that the defendant
Szuhsiung Ho is hereby committed to the custody of the Bureau of
Prisons for a term of imprisonment of 24 months.

Upon release from imprisonment, you shall be placed on
supervised release for a term of one year. Within 72 hours of
release from the custody of the Bureau of Prisons, you shall
report in person to the probation office in the district to
which you are released.

While on supervised release, you shall not commit
another federal, state, or local crime, comply with the standard
conditions adopted by this Court in Local Rule 83.10, and not
illegally possess a controlled substance. You shall not possess
a firearm, ammunition, destructive device, or other dangerous
weapon.

You shall cooperate in the collection of DNA as
directed by the probation officer, and you shall comply with a
special conditions of: One, providing probation officer with
access to requested financial information; two, you shall not
incur new credit charges on existing accounts or apply for
additional lines of credit without permission of the probation
officer until the fine has been paid in full. In addition, you
shall not enter into any contractual agreements obligating funds
without permission of the probation officer. And, three, you
shall pay any financial penalty imposed by this judgment. Any
amount that remains unpaid at the commencement of the term of

UNITED STATES DISTRICT COURT

1  supervised release shall be paid on a monthly basis in an amount

2  of at least ten percent of your net monthly income.

3      Title 18 U.S.C. Section 3565(b) and 3583(g) require

4  mandatory revocation of supervised release for possession of a

5  controlled substance, ammunition, or firearm, or for refusal to

6  comply with drug testing.  The mandatory drug testing condition

7  in this case, however, will be suspended based on the Court's

8  determination the defendant poses a low risk of future substance

9  abuse.

10     Pursuant to Title 18 U.S.C. Section 3013, you shall pay

11 a special assessment fee in the amount of $100, which shall be

12 due immediately.  And, again, the Court will impose the fine as

13 previously stated.

14     The plea agreement is accepted, and Count 2 is

15 dismissed.

16     Pursuant to Rule 32 of the Federal Rules of Criminal

17 Procedure, the Court advises you may have the right to appeal

18 the sentence imposed in this case.  A notice of appeal must be

19 filed within 14 days of entry of judgment.  If you request and

20 so desire, the clerk of the court can prepare and file the

21 notice of appeal for you.

22     It's further ordered, absent any objection, you remain

23 on bond pending designation by the Bureau of Prisons.

24     Mr. Atchley, does the government have any objection to

25 the sentence just pronounced that has not previously been

UNITED STATES DISTRICT COURT

1    raised?

2            MR. ATCHLEY:  None that have not previously been

3    raised, Your Honor.

4            THE COURT:  All right.  Thank you.

5            Mr. Zeidenberg, does the defendant have any objection

6    to the sentence just pronounced that has not previously been

7    raised?

8            MR. ZEIDENBERG:  No, Your Honor.

9            THE COURT:  Anything further on defendant's behalf?

10   Mr. Davies?

11           MR. DAVIES:  We have a designation request, Your Honor.

12           THE COURT:  Uh-huh.

13           MR. DAVIES:  And in this case, in addition to what the

14   Court has already stated about recommending that Dr. Ho be

15   considered for direct home confinement at the appropriate time,

16   I think in the event that he is sentenced to a federal facility,

17   in consulting with his family, we would request that the Court

18   recommend designation to the -- and I'm going to botch this

19   pronunciation, but it's Schuylkill Federal Prison Camp in

20   Minersville, Pennsylvania, based on proximity to his family.

21           And in light of the unusual nature of the original

22   charge, we would ask -- also ask the Court to state that it

23   bases its recommendation on a finding, that's agreed to by the

24   parties, that the offense of conviction is not one of espionage,

25   treason, sabotage, or related offenses, as those matters are

                    UNITED STATES DISTRICT COURT

1   defined in the BOP Guidelines, because we want to make sure

2   there's not an incorrect security classification.

3           And I've drafted our request to the Court, if I could

4   proffer that at this time.

5           THE COURT:  Has Mr. Atchley seen it?

6           MR. ATCHLEY:  I have, Your Honor.

7           THE COURT:  You don't have any objections?

8           MR. ATCHLEY:  No, sir.

9           MR. DAVIES:  He asked for one correction, so you'll see

10  a handwritten --

11          THE COURT:  Okay.

12          MR. ATCHLEY:  Basically, I think he's concerned about

13  going to maximum security.  And we don't think maximum security

14  would be appropriate for him.

15          MR. DAVIES:  May I approach?

16          THE COURT:  All right.  Absent objection from the

17  government, then the Court will include, Ms. Norwood has that

18  language, will include the language jointly submitted by the

19  parties as well as the designation recommendation.

20          MR. DAVIES:  Thank you, Your Honor.

21          THE COURT:  Anything further on defendant's behalf?

22          MR. DAVIES:  No, Your Honor.

23          THE COURT:  Anything further from the government?

24          MR. ATCHLEY:  No, sir.

25          THE COURT:  Thank you, everyone, for your participation

                        UNITED STATES DISTRICT COURT

1    and attendance, and we'll stand adjourned or in recess.

2              THE COURTROOM DEPUTY:  All rise.  This honorable court

3    shall stand adjourned.

4         (Proceedings adjourned at 10:17 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1                    **CERTIFICATE OF REPORTER**

2    STATE OF TENNESSEE

3    COUNTY OF KNOX

4            I, Rebekah M. Lockwood, RPR, CRR, do hereby certify

5    that I was authorized to and did stenographically report the

6    foregoing proceedings; and that the foregoing pages constitute a

7    true and complete computer-aided transcription of my original

8    stenographic notes to the best of my knowledge, skill, and

9    ability.

10       I further certify that I am not a relative, employee,

11   attorney, or counsel of any of the parties, nor am I a relative

12   or employee of any of the parties' attorney or counsel connected

13   with the action, nor am I financially interested in the action.

14       IN WITNESS WHEREOF, I have hereunto set my hand at

15   Knoxville, Knox County, Tennessee this 16th day of October,

16   2017.

17

18

19

20   _____
     REBEKAH M. LOCKWOOD, RPR, CRR
21   Official Court Reporter
     United States District Court
22   Eastern District of Tennessee

23

24

25